HARTZ, executor, *v.* SOBEL *et al.* HARTZ *v.* SOBEL *et al.*

1. A testatrix, after the execution of her will, cut therefrom two items giving bequests of money, and cut from another item, in which a bequest of money had been given to two of her nephews, the name of one of them, and also cut out the name of the same nephew as an executor, and removed other words and pluralizing letters which showed that there were more legatees than one in the last-mentioned bequest and more executors than one nominated. The will was propounded without such parts which had been cut therefrom. Evidence was introduced to show that the testatrix did not intend to revoke the entire will, but only to revoke the parts eliminated therefrom, and that she retained the instrument, after such cutting, as being her will. *Held,* that under the statute of this State a revocation of a will *pro tanto* by canceling, obliterating, or destroying such part is not authorized.

2. Under the facts stated in the preceding headnote, if the testatrix did not intend to revoke the entire will, but only the particular legacies and the appointment of the executor, which were cut therefrom, a revocation of the entire will would not result as matter of law from such cutting.

3. If a will was duly executed, and when propounded for probate it appeared that certain words had been cut from it by the testatrix, with a view to making a *pro tanto* revocation only as to three bequests of money and the appointment of a certain executor, and it could be shown what such words were, they could be restored by evidence, and the will as originally executed admitted to probate.

4. Under such circumstances a legatee whose name was thus cut from the will may, when the will is propounded, enter a caveat to its being probated in its incomplete condition, and may plead and prove what were the words removed from the will, and pray that it be probated as originally executed. He is not compelled to merely file a caveat to the probating of the will as propounded, and then in a separate litigation propound the same will with the addition of the missing words and clauses.

5. As the person claiming to be a legatee could intervene in the court of ordinary and set up the contentions stated in the preceding head-

note, he could do so in the superior court, after the case had been carried thereto by appeal from the court of ordinary.

JULY 13, 1911.

Appeal. Before Judge Felton. Bibb superior court. April 28, 1910.

Morris A. Hartz propounded for probate in solemn form an instrument as the last will and testament of Mrs. Minnie Cave. Certain persons, as heirs at law of the decedent, filed a caveat on the grounds, that the decedent did not execute the will propounded: that it was never signed by her and attested by subscribing witnesses; that she revoked the will made by her on March 31, 1908, by mutilating it, with intention to revoke it; and that the mutilation consisted in cutting out of the will and removing and destroying certain portions, namely, item 10, item 11, and certain words and letters in two other items, eliminating her nephew, Sidney L. Hartz, as a legatee and also as an executor. The case was carried to the superior court by appeal. In that court Sidney L. Hartz, claiming to be an heir at law of the decedent, and a beneficiary under the will, filed an intervention in which he entered a caveat to the petition for the propounding of the will as offered. Attached to this intervention was a copy of the will as it was claimed to have existed before any change was made in it; and it was prayed that the will be admitted to record as originally executed.

The original caveators demurred to this intervention, on the following grounds: (1) The superior court is without jurisdiction to entertain a petition for the probate of a will, and the intervention seeks to probate an alleged will which has never been offered in the court of ordinary, which alone has jurisdiction to entertain a petition for probate. (2) The intervention is not germane to the proceeding, which is a petition for probate in solemn form of another and distinct paper alleged to be the last will and testament of the decedent. (3) The sole issue is whether or not the paper offered for probate by Morris A. Hartz is the last will and testament of the decedent; and the intervention can not set up for probate any other will than that offered by the propounder. (4) Sidney L. Hartz appears as the caveator in the proceeding of Morris A. Hartz to propound a certain will, and he can not be both a caveator and a propounder in the same proceeding. The court sustained the demurrer, in so far as the inter-

vention sought to set up another will and place Sidney L. Hartz on the side of the propounder. To this he excepted.

The case then proceeded to trial. The evidence showed the following facts: On March 31, 1908, Mrs. Cave executed a will. She died on August 12, 1909. A few days before her death she stated, that she intended that Morris Hartz should manage her affairs; that the conduct of Sidney Hartz was unbearable to her; and that she considered he had disgraced the family, and she would not recognize him in any way whatever. To another witness she stated (referring to a paper which she had in her hand): "This is my will, and I have made all the changes in it I want to do." In speaking of the changes which she had made, she said: "I have one particularly. I have cut Sidney Hartz out." She frequently expressed the desire to have her will opened before she was buried. After she died, search was made for it, and, in a desk in her room, near her bed, was found an envelope tied with a string, and having endorsed on it "The last will and testament of Mrs. Minnie Cave, to be opened before her burial." The desk was one which was kept locked, and to which the decedent kept the key while she lived. In the same envelope with the will were two slips of paper containing memoranda in reference to the inscription to be placed on. the tomb of the decedent and that of her deceased husband.

The will as offered for probate provided, in the first and second items, for the payment of the debts of the testatrix and her burial. The third, fourth, and fifth items contained bequests to charitable institutions. The sixth item was as follows: "I give and bequeath to my nephew ☐ Morris A. Hartz, ☐☐☐☐☐ child ☐☐☐ of my brother, John Hartz, lately deceased, ☐☐☐☐ the sum of five thousand dollars absolutely." (The spaces marked represent holes in the paper, which had been cut out with some sharp instrument.) The seventh, eighth, and ninth items contained specific bequests to relatives. Then came another opening caused by cutting something from the paper. Then followed an item numbered 12, which contained a residuary clause, leaving the residuum of the estate to a brother and sister and the children of another brother and sister of the testatrix. The 13th item nominated an executor and conferred certain powers upon him. Here again the will had been cut. As offered for probate it began.

as follows: "I hereby nominate and appoint as executor ☐ of this my last will and testament, my nephew, ☐ Morris A. Hartz, ☐ giving ☐ full power and authority, whenever in ☐ judgment it may be necessary," etc. Later in the item reference was made more than once to the "executors."

It was proved that the will had been written on a typewriter, and a carbon copy of it, as it was when signed, had been preserved, which showed that when the will was signed it did not have the parts cut from it, and also showed what it contained at that time. Item six, as it originally stood, read as follows: "I give and bequeath to my nephews, Morris A. Hartz and Sidney L. Hartz, children of my brother, John Hartz, lately deceased, each the sum of five thousand dollars absolutely." Item ten contained a bequest of $1,000 to a friend of the testatrix, and item eleven contained a bequest of $100 to an employee. The thirteenth item began as follows: "I nominate and appoint as executors of this my last will and testament, my nephews, Morris A. Hartz and Sidney L. Hartz, giving them full power and authority, whenever in their judgment it may be necessary," etc.

At the close of the testimony, the presiding judge directed a verdict in favor of the caveators. The propounder moved for a new trial, which was refused, and he excepted.

*Miller & Jones,* for plaintiff.

*Hardeman, Jones, Callaway & Johnston* and *Hall & Fowler,* for defendants.

LUMPKIN, J. (After stating the foregoing facts.) The testatrix, after executing a will, cut from it with some sharp instrument two items and also certain words. When the will was propounded for probate, there were vacant places where these words had been, but the will presented was connected and expressed a complete testamentary scheme without the omitted words and items. By witnesses it was shown that a carbon copy of the will, except as to the signature and attestation, had been preserved. From this it appeared that the two items which had been cut out gave two legacies of $1,000 and $100 respectively, but did not affect the general testamentary purpose. The words which were cut from the will eliminated one of the nephews of the testatrix from an item where there was bequeathed to two of her nephews the sum of $5,000 each, and also eliminated him from the clause appointing

executors, leaving the bequest and appointment to stand as to the other nephew. The evidence strongly indicated that the testatrix did not intend to cancel or revoke her entire will, but only in the particulars mentioned, and that she preserved it and regarded it as her will in force after she had cut the words from it.

1–3. A will does not confer any present right at the time of its execution. Until the death of the testator, it has been called ambulatory. It has been compared to an undelivered deed or power of attorney, which contains an expression of a purpose, which has not gone into effect. In the absence of all statutory regulation, it would be revocable by any act or declaration that the purpose of the testator had changed, and that the paper no longer expressed his testamentary wish. This would of course leave wills open to attack by parol to a dangerous extent. To guard against such latitude, statutes have been passed; and acts which will revoke a will must be such as the statute permits.

Revocation may be implied or express. In the former case it results from certain changes in the testator's circumstances, from which the law infers or presumes that he intended a change, either total or partial, in the disposition of his property. An express revocation arises from some act on the part of the testator, done ·for the purpose of destroying the effect of the will in whole or in part; or from making some other will or codicil differing in whole or in part from the disposition previously made; or a partial revocation may be made by conveying the devised property, and thus withdrawing it from the operation of the will. The English statute of frauds (29 Charles 2) contained the following provision: "No devise in writing of any lands, tenements, or hereditaments, nor any clause thereof, shall be revocable otherwise than by some other will or codicil in writing, or other writing declaring the same, or by burning, cancelling, tearing, or obliterating the same by the testator himself, or in his presence and by his directions and consent." This recognized the power to revoke a will wholly or partially, it having been held that the words "any clause" were not restricted to an entire item or complete dispository clause. The burning, cancellation, tearing, or obliteration was not obliged to be attested. Under this provision, by the erasure, cancellation, or obliteration of the name of an executor or of a devisee, the will was not entirely revoked, but only partly so, and the remainder of it stood un-

affected. 1 Jarman on Wills (5th Am. ed.), 282 (*129), 291
(*134) ; Ib. (6th Eng. ed., by Sweet and Sanger) 143 et seq.;
Short *v.* Smith, 4 East, 418 (new ed. 489) ; Larkins *v.* Larkins,
3 Bos. & Pul. 14 ; Swinton *v.* Bailey, L. R. 4 App. Cas. 70.

By statute 1 Vict. c. 26, it was enacted that "No will or codicil,
or any part thereof, shall be revoked otherwise than as aforesaid
[that is by marriage], or by another will or codicil executed in man-
ner hereinbefore required, or by some writing declaring an in-
tention to revoke the same, and executed in the manner in which
a will is hereinbefore required to be executed, or by the burning,
tearing, or otherwise destroying the same by the testator, or by
some person in his presence and by his direction, with the in-
tention of revoking the same." The next section contained the
statement that "no obliteration, interlineation, or other alteration,
made in any will after the execution thereof, shall be valid or have
any effect, except so far as the words or effect of the will before
such alteration shall not be apparent, unless such alteration shall
be executed in like manner as hereinbefore is requird for the
execution of the will," etc. Under this statute, where a testatrix
duly executed her will, and sometime afterward cut out, with a
pair of scissors, the name of the person appointed executor, and
stated that she had "cut G. P. out of her will," it was held that
the will was only partially revoked, and that it was entitled to
probate in the state in which it was found at the death of the
testatrix. In the Goods of Leach, 63 L. T. R. (N. S.) 111; Goods
of Taylor, Id. 230.

In the United States, where the English common law and the
statute of frauds have been adopted, unless altered by statute, the
rule as to the total or partial revocation of a will remains in force.
In some of the States statutes have been adopted restricting the
partial revocation of a will by means of interlineation, obliteration,
tearing, or alteration. In some instances partial revocation in
this manner is expressly prohibited; in others the statute makes
provision for the revocation of a will in its entirety by such means,
omitting any reference to revocation of a clause or part of it.
Where such statutes have been enacted, it has been held by several
courts that a partial revocation by canceling, erasing, obliterating,
or tearing the name of a devisee or other words will not operate
as a good partial revocation. It has also been held in several cases,

that, where the words thus sought to be revoked can be ascertained from the face of the will, the attempted revocation of them will be disregarded, and the will will be probated as it was executed.

In Minnesota the statute provided that "No will, nor any part thereof, shall be revoked, unless by burning, tearing, canceling, or obliterating same, with the intention of revoking it, by the testator, or by some person in his presence and by his direction; or by some will, codicil, or other writing, signed, attested, and subscribed in the manner provided for the execution of a will." A testator made certain erasures and interlineations in a duly executed will. They were so made that there was no difficulty in reading the will as it was originally written. After he made the alterations, at his request two persons signed the will as witnesses to "the erasures and interlineations made by the testator." What such erasures and interlineations were the witnesses did not know. It was held that the alterations did not supersede the provisions of the will; that the witnessing of such alterations did not amount to an attestation of the will as altered; and that the alterations did not operate as a revocation of the original will. Penniman's Will, 20 Minn. 245 (18 Am. R. 368).

In Illinois the statute provided that "No will, testament, or codicil shall be revoked, otherwise than by burning, canceling, tearing, or obliterating same by the testator himself, or in his presence, by his direction and consent, or by some other will, testament, or codicil in writing, declaring the same, signed by the testator or testatrix, in the presence of two or more witnesses, and by them attested in his or her presence." A testator, after the publication of his will, sent for the executor and custodian of it, and informed him that he (the testator) wished to alter his will so that A. should have a tract of land devised therein to B. The executor, at the instance of the testator, canceled the name of B. by drawing a line through it with a pen, leaving the name still legible, and interlined over it the name of A., so that the devise read to A.; but the will, as altered, was never republished or attested by two witnesses in the presence of the testator. It was held that the alteration in favor of A. was inoperative, for want of attestation; and that, when the testator directed the erasure of the name of a devisee and the interlineation of the name of another person, with intent not to revoke the devise itself, but simply to substitute

another devisee in place of the original one, which was done by drawing a pen through the original name but leaving it still legible, and the alteration failed for want of a new attestation, the erasure of the name of the original devisee did not amount to a revocation of the devise to her. Wolf v. Bollinger, 62 Ill. 368. This decision was not based solely on the inability to revoke pro tanto, but the doctrine of dependent relative revocation was invoked.

In Ohio the statute read as follows: "A will shall be revoked by the testator tearing, canceling, obliterating, or destroying the same—with the intention of revoking it—by the testator himself, or by some person in his presence, or by his direction," etc. It was held, that, under this section, a clause of a will could not be revoked by the testator by drawing ink lines through the words thereof, with an intent to revoke such clause, but with no intent to revoke the whole will. It was said, that, "in such case, when the words of such clause remain legible, the whole will should be admitted to probate, including such erased clause as a valid part of such will." Griffin v. Brooks, 48 Ohio St. 211.

In New York the statute enacted that "No will in writing, . . nor any part thereof, shall be revoked or altered, otherwise than by some other will in writing, or some other writing of the testator declaring such revocation or alteration, and executed with the same formalities with which the will itself was required, by law, to be executed; or unless such will be burnt, torn, canceled, obliterated or destroyed with the intent and for the purpose of revoking the same," etc. The testatrix, after executing her will, obliterated the second and fourth clauses thereof, with the intention to revoke them. The words were still apparent and legible. The surrogate directed the whole will, including these clauses, to be admitted to probate. The Court of Appeals sustained this ruling. Their decision was largely based on the fact that an earlier statute, similar to the English statute of frauds, had been repealed, and another enacted in its stead; that the later statute, in the first clause quoted, dealt with revocation by testamentary writing, and referred expressly to a revocation of the will, or "any part thereof;" that the second clause dealt with a revocation of "such will" by burning, tearing, canceling, obliterating, or destroying, "with the intent and for the purpose of revoking the same;" and that this difference in language indicated a legislative intent to allow a

partial revocation in writing but not by means of burning, tearing, canceling, obliterating, or destroying, which applied only to the whole will. Lovell v. Quitman, 88 N. Y. 377 (42 Am. R. 254).

In Alabama the statute provided, that, except in cases of marriage and birth of issue, "a will in writing can only be revoked by burning, tearing, canceling, or obliterating the same, with the intention of revoking it," etc. After the execution of a will, the testator erased the name of one of the legatees by drawing a pen through it. Evidence was offered to show that at the time of erasing the name and afterward the testator made declarations to the effect that he intended to revoke the will because he was not satisfied with it. The court of probate excluded these declarations, and charged that if the name of a legatee was erased with the intention to revoke the will only as to him, and not as to other legatees named, this was not a revocation of the will as to them. The Supreme Court held, that the declarations of the testator were admissible; that whether he intended to revoke the whole will or only the part of it making a certain person the legatee was a question for the jury; that if the erasure was made with the intention to revoke the whole will, and, when explained by the declarations of the testator, was so material as to justify the inference of an intention to revoke the entire instrument, it would be effectual for that purpose; and that, if the intention was only to revoke the will pro tanto so as to expunge the name of a legatee, the erasure was inoperative for such purpose. Law v. Law, 83 Ala. 432.

In Maryland the statute declared that "No devise in writing of lands, tenements, or hereditaments, or any clause thereof, shall be revocable," except in the manner designated. A testator left ten children. By his will he directed that his estate should be divided into ten equal parts or shares, and he gave to all his children life-estates in their respective shares, with remainders over to their children, except two named sons, to whom he gave their respective shares absolutely. They were also made executors of the will, and trustees of the other estates. After the execution of the will, the testator erased the names of these two sons, wherever they occurred, by drawing a line through them with his pen, but leaving the names legible. The erasures operated to confer estates in fee simple on all the sons. It was held, that the attempted obliterations were inoperative, and that the will should be read as it

was originally written and executed. Eschbach *v.* Collins, 61 Md. 478 (48 Am. R. 123).

In Connecticut the statute provided that "No will 'or codicil shall be revoked in any other manner except by burning, canceling, tearing, or obliterating it by testator or by some person in his presence by his direction, or by a later will or codicil." Another statute provided how wills should be executed. A testator executed a will containing two items. By the first, after providing for the payment of his debts, he gave to two named nieces each ten shares of railroad stock. By the second item he left all the residue of his property to his two brothers, share and share alike. When the will was presented for probate, lines appeared drawn through all of the first item except the words referring to the payment of the testator's debts, thus striking out the gift of shares of railroad stock to his nieces, and leaving all of his estate to fall into the residuary clause. The words over which these lines were drawn were in no other manner canceled or obliterated, but remained legible. The probate court held that the will should be probated without the stricken words and clauses. The superior court, on appeal, reversed this judgment. The Supreme Court sustained the latter ruling. In doing so they said that "The sole inquiry was, did this fact operate as a revocation, not, indeed, of the entire will, but of that portion of it?" They held that an erasure of a specific legacy from a will, with the effect of increasing the residuary bequest, was not a sufficient revocation of such legacy, under the statutes above cited; that it was in effect the making of a new testamentary disposition; and that the will should be probated with the stricken words included as part of it. Appeal of 'Miles, 68 Conn. 237 (36 L. R. A. 176, 36 Atl. 39).

In Schouler on Wills (3d ed.), § 397, it is said: "This doctrine of partial revocation, even under the restrictions adopted by later English legislation, is not greatly favored in American codes at the present day. Many of our local enactments, it is true, once pursued the language of 29 Car. II, so as to admit of revocation pro tanto; but of late years that language has undergone a change of expression in leading States. Various codes now drop all reference to revocation in part; and the general policy intimates that such changes of disposition require an instrument executed with all the formalities of a will." In 30 Am. & Eng. Enc. Law (2d ed.), 642,

it is said: "The canceling or obliterating of a particular devise or bequest affects that provision of the will only, and not the whole will. In those jurisdictions where partial revocation is permissible, the result is the revocation of the clause canceled; in other jurisdictions the act is of no effect whatever."

In Massachusetts an early statute permitted a revocation in this manner of a devise of land, "or any clause thereof." A later revised statute provided that "No will shall be revoked," except in certain specified ways. It contained no reference to a partial revocation. The Supreme Court of that State, nevertheless, held that an erasure by a testator of a certain clause in his will, with the intention of revoking it only, was a valid revocation of such clause, but not of the whole will; and that the property thereby covered, in the absence of a contrary intention, passed under the general residuary clause in the will. This is not in accord with cases already mentioned, and has been considerably criticised.

In the decisions from Maryland and Connecticut above cited, it was argued that where the cancellation or obliteration of a part of a will would not only revoke a legacy but also operate, like an alteration, to convey to another legatee a new estate or increase that given him by the will, it amounted in effect to an alteration or new gift, and such a change would have to be executed like a new testamentary disposition. In the Maryland case this was applied to an obliteration which it was held would increase a life-estate into a fee simple. In the Connecticut case, the erasure of a specific legacy had the effect of increasing the residuary bequest. The court gave this illustration of what might be done in the way of transmutation by means of mere erasure: "Suppose the original words were: 'To my son William I give nothing, and give all my estate to my son John.' The will, with no addition, could be made to read: 'To my son William I give all my estate.'" This could be done by merely erasing the words "nothing, and give" and the words "to my son John." The argument advanced in these two cases against permitting erasures or obliterations in a will, which would result in taking an estate from one devisee and giving it to another, is very strong. But candor compels the writer to say that it may be doubtful whether the learned judge who wrote the opinion in the Maryland case did not misconstrue the language of Lord Alvanley in Larkins v. Larkins, 3 Bos. & Pul. 21, supra (which he

quoted as an authority for the position taken), when Lord Alvanley's statement is considered as a whole; and this doubt is strengthened by what was said by the Lords in Swinton *v.* Bailey, L. R. 4 App. Cas. 70, supra.

In Page on Wills, 284, it is said: "Recent statutes expressly provide that no alteration in the contents of a will shall have any effect unless executed with the formalities required for the execution of a will, or omit all reference to revocation of a part of a will; . . but if the words canceled are illegible, and can not be proved otherwise, the court will necessarily be unable to probate them; and as it does not appear to be the intention of the testator to revoke the entire will, it must be probated with the canceled parts blank. The only point upon which there seems to be actual conflict of authority in this connection is where the statute omits all reference to revocation of a part of a will, neither expressly permitting nor expressly prohibiting it. The weight of authority seems to be that under such statutes a partial revocation of a will is impossible in law, if the words sought to be revoked are still legible." See also notes to Lawson *v.* Morrison, 2 Hare & Wall. Am. Lead. Cas. (5th ed.) 487 et seq.; and note to Graham *v.* Burch, 28 Am. St. R. 344 (47 Minn. 171, 49 N. W. 697).

Let us now consider more particularly the law of this State on the subject of revocation of wills. The English statute of frauds was included in the digests of the laws preceding the original code, and this continued as late as the publication of Cobb's Digest in 1851, where it will be found on page 1127 et seq. By the act of 1852, the law as to the revocation of wills devising realty was also made applicable to those bequeathing personalty. (Acts 1851-52, p. 104.) When the first code (which took effect on January 1, 1863) was adopted, the article on the subject of revocation of wills contained nine sections. By section 2438 it was declared that a will, having no effect until the death of the testator, is necessarily revocable by him at any time before his death. Section 2439 declared that "A revocation may be either express or resulting. An express revocation is where the maker by writing or acts annuls the instrument. An implied revocation results from the execution of a subsequent inconsistent will." It then dealt with the time when such revocation took effect. Section 2440 declared that an express revocation, by written instrument, must be executed with the same

formality as that required for the execution of a will. It also dealt with the effect of destroying a revoking will and the revival of a will by republication. Section 2441 was as follows: "An express revocation may be effected by any destruction or obliteration of the original will, or a duplicate, done by the testator, or by his direction, with an intention to revoke; such intention will be presumed from the obliteration or canceling of a material portion of the will; but if the part canceled be immaterial, such as the seal, no such presumption arises." Section 2442 was as follows: "In all cases of revocation, the intention to revoke is necessary to make it effectual. An express clause of revocation will not operate upon a testamentary paper, where it is manifest that such was not the intention." Sections 2443 and 2444 dealt with inconsistent provisions in a subsequent will, and inconsistent clauses in the same will. Section 2445 provided that the marriage of the testator, or the birth of a child to him, subsequently to the making of a will in which no provision was made in contemplation of such event, should revoke the will. Section 2447 dealt with codicils and the subject of republication. These sections have been included in each subsequent code, including the last one, which was adopted in 1910. §§ 3916-3924.

It will be seen that no express reference was made to revocation pro tanto, except in the provision that an "implied revocation [by a subsequent will] extends only so far as the inconsistency exists," and that any portion of the first will, which can stand consistently with the testamentary scheme and bequests in the last, shall remain unrevoked. On the subject of revocation pro tanto by destruction or obliteration the code is silent. It has been more than once said that the code "subsequently" adopted the English statute of frauds. But it is evident that there are some changes which must have been intentionally made. In the first place the reference to revocation of a clause or devise by destruction or obliteration, contained in the English statute, was left out. In the English statute, prior to the Victorian statute of wills, the acts of revocation, other than by writing, were mentioned as "by burning, cancelling, tearing, or obliterating." The language of the code is "by any destruction or obliteration of the original will." These words may be sufficiently broad, in connection with their context, to cover the other terms employed in the English statute, but they

37

do not follow it literally. Again, under the English statute, the erasing or canceling of one or more clauses, although they might be substantial or material in their character, did not generally affect the rest of the will, unless it left the remainder unintelligible, and thus necessarily operated as a revocation of the whole. Under the code it is provided that an intention to revoke the will will be presumed from the obliteration or cancellation of a material portion of it. It was argued that the word "material" meant essential. But the language of the code indicates that it does not use the word in so restricted a meaning. It illustrates what is immaterial in Georgia by reference to the seal. In Black's Law Dictionary the word "material" is defined to mean "important; more or less necessary; having influence or effect; going to the merits; having to do with matter, as distinguished from form."

The question of increasing or diminishing an estate by means of an erasure or obliteration seems not to have been discussed in the earlier English cases. In the Larkins case, supra, which was decided in 1802, Rooke, J., said: "It is rather extraordinary that this point should now come to be decided for the first time." When the codifiers dealt with the subject of revocation of wills, not only having before them the English statute of frauds, but doubtless investigating also the decisions which had been made on the subject, they formulated the sections cited, which were generally similar to the English statute of frauds, but did not follow its exact terms. While they were codifiers and not legislators, four times the code, containing these same provisions, has been adopted. We think that the section touching the revocation of a will by obliteration, canceling, or the like should be construed in harmony with the construction of similar statutes by other courts in reference to the subject now under consideration. And, under a proper construction thereof as embodied in section 3919 of the Code of 1910, the statement that "an express revocation may be effected by any destruction or obliteration of the original will, or a duplicate, done by the testator, or by his direction, with an intention to revoke," dealt with an express revocation of the entire will, and not of a clause or part thereof, by destruction or obliteration. The obliteration or canceling by the testator of a material portion of the will raises a presumption of an intention to revoke the whole.

If, then, our statute does not provide for the revocation of a clause or part of a will by destruction or obliteration of it, the next question which arises is what shall be the effect of such an obliteration, if actually made, with intent not to revoke the entire will but only a particular clause or part thereof. The presiding judge expressed his view on this subject in the following part of a charge or opinion which he delivered before directing a verdict. "The intention to revoke, in the opinion of the court, does not mean, in its legal sense, that it is necessary, if there be an intentional obliteration or destruction of some part of the will, that the intention should relate to the destruction or obliteration of the whole will, in order to be effective to destroy and obliterate and revoke the entire will; but if a part of the will material in its character, and in the opinion of the court, any legacies eliminated from the will by cutting them out physically so as to obliterate and destroy the continuity of the will is, to that extent, such a declaration on the part of the testator as shows an intent to revoke, and the intent goes in law, whatever in point of fact may have existed in the mind of the testator, but that, in law, it goes to the revocation of the instrument completely and not pro tanto." In this view we can not concur. Aside from the construction of our code or similar statutes, it has always been held that revocation involves both act and intent. In Malone's Administrator *v.* Hobbs, 1 Rob. 346 (39 Am. D. 363), Baldwin, J., said that "A cancellation or destruction, to effect a revocation of the whole instrument, must be directed against the whole, or an essential part of it." In Brown's Will, 1 B. Mon. 56 (35 Am. D. 174), Robertson, C. J., said: "The obliteration or cancellation of a portion of a testamentary paper, by the testator himself, is admitted to be an equivocal act, the legal effect of which generally depends on extrinsic proof of the accompanying circumstances indicating the intention, and therefore, although the *prima facie* import of an act of cancellation may be that it was done *animo revocandi,* yet that presumption may be repelled by parol proof of facts showing that the *animus cancellendi* applied only to so much of it as had been actually canceled." Section 3920 of the Code of 1910 declares, that, "In all cases of revocation, the intention to revoke is necessary to make it effectual." If the revocation referred to is of the entire will, it must be an intention to revoke the entire will. The statement in section 3919, that "such

intention will be presumed from the obliteration or canceling of a material portion of the will," can not mean a conclusive presumption. If so, it would have been much simpler to state that the obliteration or cancellation of a material portion of the will operated as a cancellation of the will as a whole. If the obliteration or canceling of a material part merely raises a prima facie presumption of an intention to revoke the whole, and the intention to revoke must exist in all cases to make the revocation effectual, it can not be held that the testatrix revoked her entire will, whether she intended to do so or not. Parol evidence was admissible to rebut such presumption. In *McIntyre* v. *McIntyre,* 120 *Ga.* 67 (47 S. E. 501, 71 Am. St. R. 501), it was held that "Joint operation of act and intention is necessary to revoke a will." Dealing with the subject of whether certain erasures and obliterations were made with intent to revoke a will absolutely or were dependent upon the making of a new will, Chief Justice Simmons said: "The matter finally turns upon the intention of the testator, and no mere presumption can be allowed to defeat this intention when it has been made to appear."

In *Burge* v. *Hamilton,* 72 *Ga.* 568, a will, as offered for probate, was written on ten pages. Pages 1, 2, 3, 4, 5, 7, and 9 were clearly numbered, and without alteration in the numbering. On page six the numbering appeared to have been changed from 5 to 6. On page 8 the numbering appeared to have been altered from 7 to 8. On the last page the numbering at the top of the page had been altered from 11 to 10. At the bottom of this page was the number 11. The entire will was in the handwriting of the testator, and his signature was on each of the pages. Each page contained a separate paragraph of the will. A codicil was executed, in which it was stated that the will was approved except as altered by the codicil. The latter was written on pages numbered 12, 13, and 14, and was attached to the paper offered for probate. Parol evidence was offered to show that the will was in the same condition when the codicil was executed and attached to it as when it was offered for probate, and that the will was executed as it was offered. The caveators attacked it, among other reasons, because it showed on its face that a part of it was missing. The main question discussed was the admissibility of the evidence. But in the course of his opinion, after citing numerous authorities, Chief Justice Jackson

said: "These references to able text-books and cases decided show that by the English law parol evidence is admissible, first, to explain certain ambiguities; . . and sixthly, that a will, identified in part, will not be refused probate as to that part because of the uncertainty of other probable parts, the contents of which lost or missing parts are unknown. And these adjudications are not affected by or based upon any statute of Victoria or other modern law, but are constructions of the old law. How do the Georgia statutes and adjudications of this court affect this law? So far from detracting from its force, we think that the laws of this State not only confirm it, but enlarge its scope in many respects." Under this decision, if the parts eliminated could not be shown, and their contents were unknown, but there was an intelligent testamentary paper remaining, the mere possibility that the missing parts might have affected the testamentary scheme as a whole would not prevent the probate of what was left.

We thus reach the question, where it can be shown with certainty what were the words thus eliminated, and the statute does not recognize such eliminations as a revocation pro tanto, shall the will be probated without such words, or with them reproduced, so that the will shall stand as it was before the mutilation? Under the statute of Victoria, if the words or clauses were entirely absent, the will would be probated without them. The cases already cited show that in the United States, where statutes do not recognize or authorize revocation pro tanto, an effort to cancel, erase, or obliterate certain words or clauses would simply be disregarded, and the will would be probated as if no such effort had been made, if the obliterated words could be ascertained. In each of the cases which has come to our attention, this could be ascertained from the face of the paper. Magnifying glasses and the aid of expert examiners have sometimes been used to aid in deciphering obliterated words. Unless the statute so provides, there seems to be no sound distinction in principle between restoring words thus partly obliterated and the words completely obliterated or cut out, if it can be proved what they were. The present English statute makes a distinction. The Georgia statute does not. Of course, this may result in admitting parol evidence of certain words obliterated or removed from the will. But that is not extraordinary. It has been held that if a testator, by accident or mistake,

destroys his will without intention to revoke it, it does not work a revocation. If not, how could the will be proved, save by secondary evidence? If a deed or any other written instrument should, by reason of age or accidental tearing or obliteration, be in such condition that certain words were illegible or entirely missing from it, this would not destroy the whole instrument, but the missing words would be shown by the best evidence obtainable. If the paper were not recorded, the words could be proved by parol. See *Hayden* v. *Mitchell,* 103 *Ga.* 431, 434 (30 S. E. 287), where the contents of illegible lines of a record were shown by parol. Suppose that the testator should accidentally upset some corrosive substance upon his will, so that certain words should be eaten away, if it could be proved by parol what such words were, it would neither render the whole will void nor require its probate without such words. If, then, an attempted revocation of a word or clause by obliteration is not permissible, under the statute, no sound reason appears why such eliminated words should not be shown by extrinsic evidence, if they can be ascertained, and the will probated as it was before such attempted change was made. In *McIntyre* v. *McIntyre,* supra, some words were stricken with a pencil and slips of paper were pasted over other words; but it was held that the will as executed originally could be probated, if there was no intention to revoke. To hold that the will must be probated without the words removed from it, when they can be ascertained or proved, would destroy the effect of the previous rulings.

4, 5. How then shall these rulings be made practically effectual? The will is offered for probate with certain words cut from it. The evidence indicates that this was done by the testatrix, with no intention to revoke the entire will, but only certain legacies and the appointment of one of the executors, which were effected by the mutilation. One of the legatees whose name was thus cut out filed a caveat to the probating of the will with some of it omitted, and insisted that it should be probated as it stood before the attempted change. We have held that this should be done, if the words removed can be restored by evidence. Why should this legatee be required to litigate to a conclusion these two propositions separately? Must he obtain a judgment declaring the will propounded not to be the will of the testatrix, when in fact he contends that every word of it is a part of her will? Must he have it rejected

because a part of it is omitted when propounded, and then begin a new and distinct proceeding to have the identical paper, plus the omitted words, adjudged to be the will? To employ an extreme illustration, suppose that a will as executed should contain twenty pages of carefully prepared devises and bequests; that in one of the items the testator should say that he did not desire that legacy to be paid until six months after his death; that by some means the word "not" should become obliterated, and the will should be propounded without it. Must the other legatees fight to a conclusion the probate of the will containing legacies in their favor, and including all the other items which they contend were properly parts of the will, and then repropound the same thing with the word "not" restored? Such does not appear to have been the practice adopted in the cases above cited. It is true that when a will is offered for probate and a caveat filed thereto, the general question is *devisavit vel non*, and an entirely different will can not be propounded by the caveator in the same proceeding. Where this is not sought to be done, but, in response to the propounding of a will which shows on its face that certain words have been obliterated or cut from it, the effort is to show what such words were, so that the will may be probated in its entirety, if it has not been revoked, the rule has no application. Rules of practice are made for the purpose of having an orderly and systematic trial, so that the truth may be reached. To hold as contended on this point would be to make a technical rule of pleading effective, not to reach a trial on the merits, but to obstruct it and prolong litigation uselessly. The case may be somewhat unique. But when a lady undertakes to "cut out" a legatee in her will by means of a penknife or pair of scissors, the situation produced is unusual.

When the case was appealed from the court of ordinary to the superior court, it was tried de novo. The superior court had like power in the matter as the court of ordinary originally had. Pleadings which could be had in the court of ordinary could be had in the superior court. The point does not appear to have been decided in Georgia. But in *Roulette* v. *Mulherin*, 100 *Ga.* 591 (28 S. E. 291), two distinct papers were offered as the will of the same testator, and the cases thus arising were appealed to the superior court, and there consolidated. It was held that it was not error for the judge to consolidate them, "and in this manner have all

the issues disposed of by a judgment binding and conclusive upon all the parties before the court." There is nothing in the Code of 1910, § 3863, or in *Godwin* v. *Godwin,* 129 *Ga.* 67 (58 S. E. 652), in conflict with what is here said; nor is it necessary to discuss the meaning of the words, "without the consent of the testator," used in that section, when considered in connection with the reference to presumption of revocation in the latter part thereof. In the case just cited there was no contention that the testatrix had altered or revoked her will, or that it had been destroyed either in her lifetime or after her death. But a petition to probate a copy of the will in one county merely showed that the original had been propounded for probate in another county.

*Judgment reversed in each case. All the Justices concur.*