In re Estate of Downie.

[Cite as In re Estate of Downie, 6 Ohio Misc. 36.]

(No. 673583—Decided February 7, 1966.)

Application for Probate: Probate Court, Cuyahoga County.

*Mr. Richard E. McMonagle* and *Mr. George J. McMonagle,* for proponents.
*Mr. Francis X. Feighan,* for Mary K. Downie.
*Mr. A. R. Mays,* for William Downie IV.

Decatur, Referee. This matter is before this court on an action entitled Application for Probate of Spoliated Will and First and Second Codicils to said Will.

At the outset it may be said that the facts as presented would seem to be straight from the pen of Erle Stanley Gardner, the renowned author of the highly popular Perry Mason series. The original will, as presented, contains in Item 4, at the bottom of page one, the following:

"I give and bequeath the sum of Twenty-five Thousand Dollars ($25,000.00) to each of the following named *six (6) persons*: (Emphasis ours.)

A. My grand-daughter, Frances Stefanie McArdle;

B. My grandson, William Downie IV;

C. My grand-daughter, Louise Ann Gork;

D. My grandson, Lawrence Connelly Downie;"

Thereupon Item 4 abruptly ends, and an inspection of the page reveals that the last two bequests (namely, E and F) have been torn or cut off. A copy of page one of the will, marked Exhibit A, and introduced as evidence, reveals the following: In addition to the bequests of $25,000.00 each under A, B, C, and D, as described above, was E, which stated: "My wife's son, William Charles Purvis," and F, "My wife's daughter, Louise Silvestro."

Thus it is apparent that someone summarily deleted the two bequests (E and F) in the amounts of $25,000.00 each to William Charles Purvis and Louise Silvestro.

Testimony of witnesses to the two codicils, the original will and the copy of page one of the original will, marked Exhibit A, were proffered by the proponents of the will, and cross-examination was had by counsel for the incompetent and the other party in interest. At the completion of the hearing, counsel appointed as guardian ad litem of the incompetent grand-daughter, a minor, objected to the probate of the two codicils and the original will and copy of the first page of said will on the grounds that said cutting or tearing constituted an effective and proper revocation prior to death.

The application, on its face, contained the wording, "Application for Probate of Spoliated Will with Exhibit 'A' & First & Second Codicils."

Issues.

(1) Is such an obviously altered will a "spoliated or mutilated will," and as such, does it constitute a total revocation of such will, and codicils?

(2) May a copy of such excised or altered page of said will be introduced and made a part thereof?

The contestants' claim that the testator worked a complete revocation necessarily incorporates the contention that the testator did the cutting.

Reference is made to the will as "spoliated." "Spoliation," as used in Section 2107.26, Revised Code, has been defined by our own Court of Appeals as "The doing of some act manifest on the face of the will, by someone other than the testator * * *." *In re Estate of Tyler* (1952), 109 N. E. 2d 301, reversed on other grounds, 159 Ohio St. 492. While this is apparently the only Ohio case construing this word, the opinion cites very impressive authority for giving "spoliation" this technical meaning. This being so, Section 2107.26, Revised Code, which pertains to the admission to probate of a lost, "spoliated," or destroyed will, appears to have no application to the case at bar. The will was not "spoliated." Nor was it lost or destroyed within the meaning of Section 2107.26, Revised Code. "Lost and destroyed" are used in their popular meanings, the former referring to a will that cannot be found after a search but still may be in existence, and the latter to one that is not in existence. Merrick-Rippner, Ohio Probate Manual, Text, Sec. 65 (1960).

Consideration of Section 2107.26, Revised Code, can, therefore, be eliminated, and our efforts can be directed toward determining whether the testator revoked his will within the meaning of Section 2107.33, Revised Code.

Section 2107.33, Revised Code, in pertinent part provides that "A will shall be revoked by the testator by tearing, canceling, obliterating or destroying such will with the intention of revoking it, or by some person in such testator's presence, or by such testator's express written direction, or by some other written will or codicil executed as prescribed by Sections 2107.01 to 2107.62, inclusive, of the Revised Code, or by some other writing which is signed, attested, and subscribed in the manner provided by such sections."

The original will unquestionably contained six legatees on page one thereof. The second codicil, executed subsequent to the original will and first codicil, contained language ratifying and confirming the original will dated March 5, 1963, and the first codicil dated April 23, 1963, in the following manner, "I hereby ratify and confirm my said last will and testament of March 5, 1963 and my first codicil thereto," (dated April 23, 1963) "in all other respects." Thus, clearly the language of

ratification and confirmation reveals the intent to ratify the original will.

Testimony adduced at the hearing (page 18 of transcript) in which Neath Wilson, scrivener of the original will and witness thereto, revealed that the testator, upon completion of the execution of the will, left the office with it. He (Neath Wilson, the scrivener) did not see the will again after its original execution.

It is to be noted that the scrivener, in response to cross-examination in regard to the first codicil, stated thus:

Q. "Did you have occasion to discuss the contents in that document (referring to the original will) with Mr. Downie (the testator) after this execution?" (Referring to execution of the first codicil.)

A. "Yes, I think at the time the first codicil was drawn, he (the testator) said that was the only change he wanted to make in his original will, the only addition to it."

The facts are undisputed that the cut and torn will was found in the personal effects of the testator after his death. There is, further, no evidence of his cutting or tearing of the will prior to his death, nor is there a clear showing of his intent to revoke said will, but, on the contrary, the fact remains that the two codicils were executed subsequent to the original will, in which there was a clear expression by the testator that he was ratifying and confirming all aspects of the will save and except those changes as set forth in the two codicils.

By operation of the facts the clear inference arises that the altering or cutting was done at some time subsequent to the execution of the two codicils, and prior to the testator's death, *or* was done by a party or parties unknown.

Thus, does this single act of cutting or tearing a portion of the will constitute an intent to revoke the will in its entirety?

Reference is made to *In re Estate of Tyler* (1952), 159 Ohio St. 492. In that case, while the facts show that the will was in the custody of the testator from the time of execution until death and was found after the death of the decedent, the signature was torn off and Xs drawn in ink through the initials on the margin of each page. Certainly, under the circumstances, where no other party had access to the will, it was properly presumed to have been revoked, for there was no *signed* will in existence.

In the case at bar, however, there is a signed will with two bequests deleted. Certainly, there is a distinction.

The editor of 55 Ohio Jurisprudence 2d, Wills, Section 190, in discussing the matter of revocation, states:

"However, where the physical condition of the instrument is inconclusive as to the intent to revoke the will, there must be a clear showing that this intention existed before it can be held there was revocation."

The evidence shows, and the opponents to the probate of the will admit that the testator was a businessman, and a man of sound mind, who certainly knew how to change his will as evidenced by the execution of the two codicils.

Thus, in light of the fact that the contestant, as well as the proponent, contends that the testator did the excising or cutting, and no extra evidence exists as establishing the act of excising or cutting by one other than the testator, it is the opinion of this writer that *Cummings* v. *Nichols* (1936), 53 Ohio App. 520, is controlling in the case at bar. In that case, a dispositive paragraph of the will had been blotted out by pencil. In an action to contest the will, the argument was raised that, though the will was properly executed at the time, said will had ceased to be the testatrix's last will because she had canceled it with the intention of revoking it. The jury was instructed to return a verdict sustaining the will. In affirming this instruction, the court stated that:

"The question is whether * * * (the) evidence * * * (had) any tendency to prove that at the time paragraph three was canceled the testatrix thereby intended to revoke her will."

The will had never been out of the possession of the testatrix and "an inference could be drawn that she had performed the physical act of canceling, and that the only question then was whether there was any evidence of her intention."

The court stated further that:

"To effectuate a revocation, by act done to the will itself, there must be a concurrence of the act of tearing, canceling, obliterating, or destroying the will with 'the intention of revoking it.' One without the other is of no legal significance. *And the intention that is required is to revoke the entire will—not merely a part or paragraph.*" (Emphasis added.)

It should be noted that the *Tyler opinion* makes no com-

ment with regard to the *Cummings case.* It seems reasonable, therefore, to assume that the Ohio Supreme Court considered it distinguishable.

Thus, finally, our efforts can be directed toward determining whether the testator revoked his will within the meaning of Section 2107.33, Revised Code.

Section 2107.33, Revised Code, in pertinent part, provides that "A will shall be revoked by the testator by tearing, canceling, obliterating, or destroying such will with the intention of revoking it, or by some person in such testator's presence, or by such testator's express written direction, or by some other written will or codicil, executed as prescribed by Sections 2107.-01 to 2107.62, inclusive, Revised Code, or by some other writing which is signed, attested, and subscribed in the manner provided by such sections."

The method of revoking a will, like the method of making one, is purely statutory. See *Cummings* v. *Nichols* (1936), 53 Ohio App. 520. Revocation of a will can only be accomplished by compliance with Section 2107.33, Revised Code. Ohio Jurisprudence 2d, Wills, Section 173. And this section has been construed to permit the revocation of a will only in its entirety. No partial revocation is recognized. See *Coghlin* v. *Coghlin* (1908), 79 Ohio St. 71. *Giffin* v. *Brooks* (1891), 48 Ohio St. 211.

If a portion only of a will is torn, canceled, obliterated, or destroyed with the intent to revoke that part only, but not with the intent to revoke the whole will, the act will be ineffective to revoke either the initialed portion or the will itself. *Coghlin* v. *Coghlin* (1908), 79 Ohio St. 71.

Assuming then that the will was not revoked, and that it, therefore, should be admitted to probate, it remains to be determined how this partially mutilated will should be administered.

The precise question has little precedent in Ohio. There is ample authority that a will should be administered as it was originally drawn where there was an attempted partial revocation by blotting or penciling a particular provision and that provision is still legible.

See *Giffin* v. *Brooks* (1891), 48 Ohio St. 211; *Kirfel* v. *Trimbach* (Ct. App. 1953), 125 N. E. 2d 753; *In re Davis* (Prob. 1943), 39 Ohio Law Abs. 73; *Coghlin* v. *Coghlin* (1908), 79 Ohio St. 71. However, in the case at bar, the provisions were cut out com-

pletely. The only case in Ohio that appears to be in point is *In re Paulus* (Prob. 1943), 39 Ohio Law Abs. 456. There, the second page of the decedent's three page codicil had been cut out. The court stated that:

"It will be presumed that such * * * cutting off was done by the testator with the evident intention of making a partial revocation of the codicil." 39 Ohio Law Abs. 458.

The court also recognized that where a will provision has been inked or penciled out but the "clause remains legible, the whole will should be admitted to probate including such clause as a valid part of the will." The court, nevertheless, held that the codicil was revoked, on the grounds that the cancelation of parts of a will which leaves the remainder unintelligible operates as a revocation of the entire will. 39 Ohio Law Abs. 458.

In the case at bar, the portion cut out of the will does not leave the remainder unintelligible. And the opinion points up an even more significant distinction for our purposes, since in the case at bar there is a carbon copy. The court observed that the subscribing witnesses have no knowledge of the portion that is missing, and no other evidence was presented to show the full text of the codicil before the deletion occurred. "In view of the fact that part of the codicil in this case has been cut off and *cannot be reproduced*, the court must hold that the codicil is not a valid testamentary instrument." (Emphasis added.)

If competent evidence can be later produced which will establish the full text of the codicil, the court will entertain an application to repropound for probate." 39 Ohio Law Abs. 458, 460. (Emphasis added.)

Since this is only the opinion of another Probate Court and, apparently, the only decision of its kind in Ohio, a look at the law from other jurisdictions is in order. In the annotation in 24 A. L. R. 2d 514 (1952), it is stated that:

"Where the original terms of those parts of the will which have been subjected to attempted revocating acts are still discoverable, either from an inspection of the original instrument or by means of extrinsic evidence, it is generally held that the will should be admitted to probate, or distribution of the estate be made, as originally drawn."

A case cited in that annotation which is particularly in point is *In re Reedy* (Surr. Ct. 1946), 64 N. Y. Supp. 2d 779. There an intermediate paragraph of the will had been cut or torn out. The excised portion was missing and there was no evidence as to the circumstances under which such excision occurred. The court stated that:

"An obliteration or mutilation, if unaccompanied by the statutory formalities required for the execution of a will, is wholly ineffective, unless sufficient to revoke the entire will * * *. Where only a paragraph or clause of the will has been excised, the inference is that the decedent attempted an alteration intending that the remaining portions should constitute his will * * * the instrument, if properly executed, may nevertheless be admitted to probate in its original form, however, provided proof of the excised portion can be satisfactorily established." 64 N. Y. Supp. 2d 780.

The court held that proof of the excised portion was satisfactorily established by the testimony of the sole surviving witness, who had also supervised the execution of the will, that he typed the will and had made two carbon copies. This testimony and the production of the carbon copy were sufficient to establish the content of the excised portion. See also *In re Van Woert* (App. Div. 1911), 131 N. Y. Supp. 748, Modified 101 N. E. 466; *In re Westbrook* (Surr. Ct. 1904), 89 N. Y. Supp. 862; *In re Parker* (Surr. Ct. 1917), 165 N. Y. Supp. 702.

The problem of the procedure to be followed in a case like the one at bar is considered in *Hartz* v. *Sobel* (1911), 136 Ga. 565, 71 S. E. 995. The court stated:

"In each of the cases which has come to our attention * * * (the mutilated portion) could be ascertained from the face of the paper. Magnifying glasses and the aid of expert examiners have sometimes been used. * * * There seems to be no sound distinction * * * between restoring words * * * partly obliterated and words completely obliterated or cut out, if it can be proved what they were. * * * No sound reason appears why such eliminated words should not be shown by extrinsic evidence, if they can be ascertained * * *."

The court held that a legatee whose name was cut from the will could enter into a caveat to its being probated in its incomplete condition, and could plead and prove what were the

words removed from the will, and pray that it be probated as originally executed. He was not required to file a caveat to the probating of the will as propounded, and then in a separate litigation propound the same will with the addition of the missing words and clauses. *Hartz* v. *Sobel*, 136 Ga. 565, 71 S. E. at 1003, 1004. The court observed that it is true that when a will is offered for probate and caveat filed thereto, the issue is *devisavit vel non* and a different will cannot be propounded in the same proceedings by the caveator. But it was held this rule did not apply because the caveator was merely trying to show what the missing words were so that the will could be probated in its entirety.

*In re Miller* (Prob. Ct. 1926), 4 Ohio Law Abs. 736, is rather interesting, for in that case the will was so pocket worn that an original bequest of $250.00 appeared as $25.00. Extrinsic evidence, *i. e.*, the testimony of the scrivener, was permitted to show that the original bequest was $250.00, and the will was probated accordingly.

It may be added, in way of a footnote, that the above cited cases from New York and Georgia should be persuasive authority for the case at bar because a reading of those cases indicates that the statutes there being construed were very similar to the Ohio statute.

Thus, in the case at bar, it is to be noted that a thermofax copy of page one of the original will (the excised page), drawn by the scrivener who also acted as a witness, was proffered and testimony elicited as to the trueness of said copy; thus sufficient evidence was offered to establish the content of the provisions cut from the will.

In summary, the method of revoking a will being purely statutory, a revocation can be accomplished only in compliance with Section 2107.33, Revised Code, since this section has been construed to permit revocation of a will only in its entirety, no partial revocation being recognized.

It is the finding of this court that in the case at bar there was no showing of an intention to revoke the entire will.

Further, extrinsic evidence having been produced to establish the content of the excised portion of the will, said will, in its entirety, may be probated.

*Judgment accordingly.*