WILLS (§ 55*)—TESTAMENTARY CAPACITY—MENTAL CAPACITY.

> Testatrix made a will which would seem in accordance with the sentiments of her whole life, when there was no doubt as to her competency. Within six months she made a new will showing a radical change of her former intention. At the time of the execution of the second will she had sustained an attack of apoplexy from which she never rallied but died a week later. She was unable at the time of the execution of the second will to carry on the simplest conversation, and lay motionless. The lawyer who was called to draw the will had several months previously, after a former attack of apoplexy, stated that he could not understand testatrix. The only persons present besides the lawyer who drew the will were the sole beneficiary thereof and her husband. The testatrix spoke only in monosyllables and pointed with her arm to the beneficiary and expressed her desires only in reply to questions. She could not affix her mark except as her hand was guided by the lawyer, which was done without any request on her part. *Held*, that the evidence is insufficient to warrant the inference that the second will expressed the testamentary intention of the testatrix.

> [Ed. Note.—For other cases, see Wills, Dec. Dig. § 55.*]

Proceedings on the probate of a paper propounded as the last will of Anne L. Mooney. Probate denied.

Bernard I. Isecke, for proponents.
Francis X. Kelly, for contestants.

FOWLER, S. On the offer to probate the paper writing now propounded, the executor named in a will of earlier date has filed objections.

On the hearing it appears that Anne L. Mooney, whose testamentary dispositions are now at issue, was, in November, 1910, an unmarried elderly woman nearly 70 years of age. She then lived alone with a single attendant in a small flat in the city of New York. She had no ascertained relatives, having survived a bachelor brother who had lived with her most of her life. For some years prior to 1910 Miss Mooney had been an invalid, having suffered her first apoplexy in the year 1905, or thereabout. Before this seizure she was an intelligent woman and able to read. This stroke resulted in the condition which physicians, I believe, term hemiplegia, or paralysis of the side of the body, rendering Miss Mooney's right side, arm, and hand useless, besides seriously affecting her powers of locomotion and speech. But, as no medical experts were called as witnesses, the surrogate is obliged to infer the disorder from the very general description and symptoms described unmistakably by the lay witnesses as "paralysis" or "stroke." From the lasting results of the first stroke, it must have been a severe one.

It was, however, shown on the hearing that Miss Mooney, subsequently to the first attack, measurably recovered possession of her mental faculties, and she could talk a little, but "not much"; "very

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

few words"; her answers were mainly monosyllables and affirmative or negative motions of the head. Yet it appears that she was able to keep house for her brother after the first stroke and until her second attack after his death. The brother and sister had few acquaintances. They were obviously highly respectable people, and their later existence seems to have been that of lonely valetudinarians. Both brother and sister were Catholics, and after her first seizure testatrix occasionally went out of doors for the purpose of attending the parish church in the neighborhood. But in the month of October, 1910, and for some months prior thereto, she was not able to go about much without assistance. This evidence is, I think, entirely uncontradicted. The variations and discrepancies in it are not noticeable on its general accuracy.

On May 19th of the year 1910, Miss Mooney made the first will, which gives standing to the contestant on this probate. · Necessarily it is conceded by contestant and proponents alike that she was then of sound and disposing mind, so that the contest concerning the testamentary capacity of the testatrix narrows itself in this proceeding to the period between May 19, 1910, and November 17th of the same year, when the paper now propounded was essayed. The dispositions contained in the earlier will, like any other declarations spoken or . written, are competent evidence in this proceeding on various grounds. Cases cited in Jones' Evidence, § 482.

The earlier will provided, in substance, for the payment of all debts and funeral expenses of testatrix, and then for religious observances, in accordance with Catholic faith and tradition, such as masses for testatrix after her death, masses for her deceased brothers and for her "beloved mother," Maria Mooney. The other bequests of the earlier will were wholly devoted to charitable or religious uses. The former agent of her brother James and of herself, one Mr. Spichter, who took no benefit under such will, was named as executor of this first instrument.

If we assume that the first will then expressed the testamentary intentions of the testatrix, and there is no evidence that it did not, the later writing now propounded evinces the most marked change of intention on the part of the alleged testatrix; and this is to be considered by the surrogate in view of the circumstances hereinafter mentioned. - McLaughlin v. McDevitt, 63 N. Y. 213, 217; Children's Aid Soc. v. Loveridge, 70 N. Y. 387, 402. Such a disposition of her estate as that indicated, when made by a lonely old woman, without kindred, a Catholic in faith, would not appear to be unnatural. It doubtless summed up the cherished affections and sentiments of the whole life of the testatrix. The later testament, in any event, shows a complete change of a prior intention. Is such radical change explained on this proceeding to probate the later writing, made under circumstances which I shall now proceed to consider? That is one of the elements for my present consideration, and it is an important one, under the circumstances here indicated.

The paper now propounded is attacked on the several grounds of want of capacity in testatrix, undue influence exerted over her, and

also for fraud and conspiracy on the part of those directly or indirectly connected with the alleged testamentary act. The issues thus presented for trial cover a wide range, and compel the surrogate to consider the mode of life of the testatrix, her relations to the objects of her bounty, as well as the mental condition of the testatrix on the day the paper propounded purports to have been made. The paper now in controversy was attempted on November 17, 1910. On November 10, 1910, or in all events shortly prior to the 17th day of November, 1910, Miss Mooney suffered from a second apoplexy, after which the evidence makes it at least doubtful whether she ever spoke a word again. Her condition after the second attack was certainly deplorable; she never again left her bed, I think, except to be lifted out of it. From this second seizure she failed to rally, and on the 24th of November, 1910, she died, just one week after the making of the paper now in controversy. Subsequently to Miss Mooney's second seizure the husband of the sole legatee named in the paper of November 17, 1910, summoned the lawyer who drew up such paper for execution. It was through such instrumentality or agency that the paper in question ultimately came into being. Under the circumstances of this case this is a fact also for consideration by the surrogate.

It is of the first importance in this cause to determine from the testimony before me just what did occur on the 17th of November, 1910, when the paper propounded appears, who were the actors in its preparation, their precise relation to the testamentary act in question and the weight of the evidence on the capacity of Miss Mooney, the alleged testatrix, to make any will at all on that day, and under the circumstances already partly narrated.

The surrogate's consideration of charges of fraud, duress, and circumvention may meanwhile be relegated to the background, for if the testatrix was then incompetent to make a will, or if the act in question was not done by her consciously, animo testandi, the probate sought must be denied. As the beneficiary under the second will is a most respectable person, apparently incapable herself of any illegal act, it will be quite unnecessary for the surrogate to consider such harsh and unnecessary contentions as those of fraud and circumvention, if probate is to be denied for want of capacity, or because the factum of will is not established with that precision which is absolutely requisite under the circumstances of this particular will.

On the 17th day of November, 1910, Miss Mooney, the alleged testatrix, not only was confined to her bed, but by preponderating proofs it is disclosed that she was unable to carry on the simplest conversation; she was inanimate, listless, motionless, and some disinterested witnesses say that she was wholly unconscious when they saw her. But we may, I think, disregard this last statement without prejudice to the result. Certainly after her second stroke Miss Mooney never again took solid food. Two disinterested witnesses saw Miss Mooney on November 17, 1910, both before and after the hour of the execution of the paper in controversy.

If their testimony is accurate, Miss Mooney on that day lacked ca-

pacity to perform the simplest legal act. But, as such testimony is to some extent challenged and contradicted, the surrogate must go farther to find convincing proof of the condition of the testatrix on the day in question. The landlady of the house in which Miss Mooney lived and died, and where the alleged testamentary act was performed, gives, I think, important testimony on this point, in which she is corroborated. This witness certainly had ample opportunity to observe the state of Miss Mooney's mind and health on or about the 17th of November, 1910, and her evidence is not favorable to proponents. While there is contradiction in many points on most of the testimony given in on the hearing, it is yet apparent from the evidence at large most favorable to proponents that on the 17th of November, 1910, Miss Mooney's state of mind and body was desperate; that her mode of communicating her wishes and desires was most limited and unsatisfactory; and that her mental capacity was very doubtful. A written statement of the lawyer employed to draw the will is in evidence, and is, I think, important. On June 8, 1910, in a letter to one who happened to be the other attesting witness, the lawyer said:

"I am writing you this letter so that if you call upon Miss Mooney, *who I cannot understand,* you make it clear to her just what is my motive." (The italics are mine.)

Mr. Shaughnessy, the other attesting witness, in his testimony also concedes in effect that the speech of testatrix was most limited. He was asked, "Did you hear her (testatrix) ask Mr. Sullivan to hold her hand?" His answer was, "No, she couldn't ask that much." And again, "Did Miss Mooney tell Mr. Sullivan to take this will away with him?" and the witness answered: "She did not. She could not tell so much as that." It seems to the surrogate that such admissions of the attesting witnesses are very significant in view of the other evidence in the cause tending to cast grave doubt on the capacity of the alleged testatrix. We must remember that it was one attesting witness who summoned the lawyer in attendance at the making of the will, and this same attesting witness was the husband of the sole legatee named in the later will. This sole legatee, though an acquaintance of long standing, was not a relative of the testatrix.

These circumstances, considered apart, are not fatal to probate. But certainly such a combination of facts and circumstances, taken in connection with the very serious condition in which the alleged testatrix then was, called for the highest circumspection and prudence on the part of all who had to do with a new will for the dangerously sick and speechless woman of very uncertain mental capacity.

Was there such circumspection on the part of its draftsman and attesting witnesses as entitled the paper propounded to respect as the will of a capable, conscious, intending testatrix? Reluctantly the surrogate feels constrained to answer that there was not. If the lawyer who prepared the paper of November 17, 1910, could not understand Miss Mooney in June, 1910, he could not better understand her in November, 1910, after she had her second stroke and was by all accounts more incomprehensible than before. How then did the lawyer get his

instructions for the contents of this testamentary paper? It must have been from some other than Miss Mooney herself. But the difficulty on this point is that there was no one else present besides the beneficiary named in the paper and her husband to aid the lawyer. Whether they did or did not so aid him may be uncertain; but one thing is certain, and that is that the dying woman and the lawyer could communicate one with the other only with difficulty, if at all.

Now, what from the evidence is conceded to have taken place at the session held for the purpose of making a will and celebrating the formalities attending its execution? There were then present the alleged testatrix, whose mental and physical condition were most unsatisfactory, if not desperate, the two attesting witnesses, including the lawyer who drafted the paper, and also Mrs. Shaughnessy, who was the sole beneficiary of the will propounded, although at some point this legatee retired from the session by the direction of the lawyer. The lawyer and the husband of the sole legatee then proceeded, with some reference to the statute of wills, to the execution of the document now propounded. It was certainly a very grave undertaking on their part, and it could have been dictated only by imperious necessity of some kind. Of this necessity the surrogate detects no evidence. Miss Mooney was already testate, and there is visible on her part no eagerness for change. In fact, Miss Mooney, by the account given in by the attesting witnesses themselves, took only a subordinate part in the performance of November 17, 1910.

There is no pretense that the chief beneficiary of this latter will was even named by Miss Mooney, the alleged testatrix. The main persons in the preparation of the instrument do say that she pointed out the sole beneficiary, and that the lawyer named executor was likewise pointed out in the same manner with a monosyllabic "you." In this doubtful way the contents of the will now offered and the dispositive provisions are conceded to have been arrived at.

Let us suppose, for an instant, that, at the time the paper now offered was in course of preparation, two women, and not one, had been present in the room with testatrix, and then Miss Mooney had been summoned to select one of them as her heir. As she must have done so by pointing her feeble left arm, this act of selection would have to be interpreted by the lawyer. What a responsibility for any lawyer drawing a will! Suppose he had erred in his interpretation, would the paper then have embodied the will of testatrix? The surrogate can see little difference between the case supposed and the facts narrated by the attesting witnesses. The will as drawn is, on the evidence offered by proponents, largely conjectural, even if it were made by a competent testatrix. Where conjectures clash, interpretation is of no value. The interpreter may be right, but the difficulty is that he may be wrong, in his conclusion. When that point is arrived at in respect of a will, the certainty required by law is wanting, and the will must fail.

Is it possible that such evidence as that indicated is sufficient, under the circumstances, to establish that this paper now offered to the surrogate is the conscious and deliberate act of a capable testator? The

surrogate is unable to bring himself to an affirmative conclusion on this point.

When it came to the signing of the paper, at the end thereof, as commanded by the statute of wills, it appears that the lawyer, without any request from the alleged testatrix, but of his own initiative, as he says, took up the useless left hand of the sick woman, placed the pen in her rigid fingers, and in this way was affixed her mark only to the document before me. Such is the evidence of the attesting witnesses themselves on the point of a subscription by testatrix. If we remember that there is evidence of disinterested persons to the effect that at this time Miss Mooney had not regained her faculties, and that since her second "stroke" she was never herself again, but a mere dying mass of inanimate clay, what is the duty of the surrogate in such a case as this?

While a surrogate should always, I think, have most careful and conscientious scruples in rejecting a paper which concerns the will of the dead, as it was said in Rollwagen v. Rollwagen, 63 N. Y. 517, there should be no straining after probate in a doubtful case, and the same thing was said in Delafield v. Parish, 25 N. Y. 9. The surrogate is obliged by positive law to satisfy himself of the genuineness of the will offered for probate and of the validity of its execution. Code Civ. Pro. § 2622. Now, when reference is made to rules of law established in such cases as this, the surrogate is not satisfied on either point.

It was said by one of the most distinguished probate judges of modern times that the burden of proof in probate proceedings is always on proponents. Barry v. Butlin, 1 Curt. 637; 2 Moore, P. C. 480. And see Thayer's Cas. Evidence, 32, 100, 106; Crispell v. Dubois, 4 Barb. 393, 397; Hoyt v. Jackson, 2 Dem. Sur. 443, affirmed 112 N. Y. 493, 20 N. E. 402. This burden never shifts throughout the entire proceeding; otherwise many of the decisions casting additional burdens, or degrees of proof, on proponents under certain circumstances prescribed, would be useless distinctions. The contrary doctrine, if intended to be announced in Delafield v. Parish, 25 N. Y. 97, has been certainly qualified in other decisions more directly in point. The burden of taking up the evidence on an affirmative plea, or an exception to probate, of course, rests in the first instance with contestants, and that is all, I think, that is generally meant by stating that the burden of proof is shifted, or that it is on contestants in probate causes. Matter of Martin, 98 N. Y. 196. When contestants have furnished their affirmative evidence, the proponents' adminicular proofs, or those in support of the probate, are in order. Taylor Will Case, 10 Abb. Prac. (N. S.) 300. But the onus probandi is always on proponents of a will, and it never shifts throughout the cause. This great rule of probate jurisdictions is reinforced by several provisions of the statute of wills and procedure thereon. Code Civ. Pro. § 2622; Decedent Estate Law, §§ 10, 15; Matter of Schreiber, 112 App. Div. 495, 98 N. Y. Supp. 483; Matter of Goodwin, 95 App. Div. 183, 88 N. Y. Supp. 734. A very recent case speaks, I venture to think (Matter of Blaine, 143 App. Div. 687, 689, 128 N. Y. Supp.

186), without precise reference to established rules denoted above. but also, I venture to think, with no intention of departing from such rules.

While I have no doubt that the burden is on the proponents to show that the will in this matter not only conforms with the requisites of our statute of wills, but also that it was the conscious, deliberate, and intentional act of a competent testator, yet, if by chance the burden of proving the contrary rests at any point on contestants, the precise application of the rule of law would make no difference in my conclusion, for, whichever way it is, the proofs offered are controlling. Orser v. Orser, 24 N. Y. 51.

The proof on the part of the proponents that the subscription of the paper propounded was made by testatrix is, I think, insufficient. It purports to be made by mark of testatrix, formed with the aid of the lawyer. No doubt, one who is unable to sign her name may call upon another for aid even to the extent of holding her hand and guiding it. Robins v. Coryell, 27 Barb. 556; Matter of Kearney, 69 App. Div. 481, 74 N. Y. Supp. 1045. But in some way the act of subscription must be the act of the intending testator and not of another. I can see no evidence of request for aid on the part of Miss Mooney, and none is pretended. It is not apparent that the subscription was more her act than that of another. This is not enough. The proofs, therefore, on this point are insufficient to entitle the paper offered to probate.

Nor am I satisfied with the proofs offered to show that on November 17, 1910, the testatrix was of sound mind and memory. In fact, I am convinced that she had not, on November 17, 1910, capacity to make or revoke a will.

In the case of a helpless, sick, or dying woman, the evidence to establish her will is required to be clear and convincing, and the burden cast on the proponents, under such conditions, has not, I think, been discharged in this cause. Proponents have failed to establish that the paper propounded was the will of Anne L. Mooney, or that it was signed by her as required by the statute of wills.

The probate sought must, therefore, be denied, and the findings and decree herein so provide, in accordance with this opinion.

Probate denied.