In the Matter of the Estate of ELIZABETH LYON CHAPIN, Deceased.

Surrogate's Court, Monroe County, February 28, 1938.

*Merle L. Sheffen,* for the motion.

*Castle & Fitch,* for the executor, respondent.

FEELY, S. After this testatrix had executed her last will in January, 1936, she appears to have executed, on April 23, 1937, while sojourning in Florida, a codicil thereto, attested by four witnesses, by the terms of which she merely forgave one of her sons, H. L. Chapin, his indebtedness to her; and confirmed her last will in so far as it was not inconsistent with the cancellation of such indebtedness. The executor nominated in the will has offered only the will for probate here, but in the petition, in addition to the usual allegation that the propounded will is the last will of the testatrix, the executor further set out that he does not offer the (previously filed) codicil also, since he believes it to be invalid and of no effect. Upon the return day of a citation for probate of the will, the respondent son named in the codicil had an order on the executors, returnable also to show cause why they should not offer the codicil also for probate. At the same time the respondent filed an answer to the petition in which he sets up only that the codicil is valid and a component part of the last will of the testatrix.

When the executor alleges he offers only the will, but not the codicil, because he believes the latter to be invalid, he does not thereby assume the proof of that negative limitation, but he does have the privilege of leaving the burden of sustaining such codicil to be borne by the only person whom the codicil purports to benefit.

This privilege derives from the nature both of the executorial office and also of the peculiar subject-matter on which it is to work. As to the latter, it is not uncommon for a nominated executor to encounter a testamentary plan that appears to be partially invalid or one that, although wholly valid, is yet obscured either by suspicious alterations or is incumbered with libelous statements that are never dispositive on their viciousness. Then there are the mutilated wills and those which, only by the specific character of

their donations, make it impossible for the executor to obtain commissions; and then there are wills that carry repulsive conditions or that place excessive burdens on the executor. Moreover, there is the well-known group of cases in which fraud, force, forgery or undue influence or mistake has invalidated only a severable legacy or independent portion of the testamentary plan. The invalid portion may lie wholly in a codicil as well as in a single paragraph or clause of the will proper.

In such circumstances, when the one who is about to undertake to execute the decedent's last will surveys the ground before him, he is not bound to accept the office, even though his renunciation might, for example, in the case of a highly personal trusteeship, leave the beneficiaries without any means of obtaining the intended benefit (*Beekman* v. *Bonsor*, 23 N. Y. 298); but the nominated or would-be executor may impose conditions on his acceptance, as, *e. g.*, that he would be paid commissions on specific legacies; or he may, in good faith, refuse to undertake to probate either a single clause in the will or a codicil that seems to him to be invalid; for his first duty, aside from preservation of assets, even before probate, is to identify what he believes to be the true, latest expression of his testator's last wishes, and to preserve and protect it to the end that it be placed in due course to be probated.

When, as in the case at bar, the only putatively invalid portion of the testamentary plan lies in a codicil, or an allegedly invalid codicil purports to be a part of the testator's pattern of division, the nominated executor is given by law the choice of several courses to follow. The preferable one is not to ignore the doubted writing and incur the imputation of suppression or concealment, but rather to bring all the data, good and bad, into common light, and, by depositing the putative codicil in the office of the court, place the burden of sustaining the invalid portion upon the one whom it purports to benefit. In the case at bar the legatee in the debated codicil was the one who filed that writing in this court, and he did so directly after the death of testatrix and three months before the probate petition was filed, with the will, by the executor. The nominated executor had the election to file both writings if both were in his hands, and, if met with a contest, he might then either have cast the burden of sustaining the disputed paper, or portion thereof, upon those who stand to be benefited by the probate of such writing or portion thereof; or the executor might have assumed that burden himself. (*Dodd* v. *Anderson*, 197 N. Y. 466.) It is not the " legal imperative duty " of a nominated executor, in a writing purporting to be a will, to offer it for probate, since any person interested in the estate as a possible distributee or legatee

may petition for probate of any writing purporting to be the plan or part of the testamentary plan of the deceased. (*Dodd* v. *Anderson, supra.*)

In the case at bar the will is not attacked, nor is the good faith of the executor. This controversy lies among the four children, who are also the residuaries of this testatrix. Two of them, by signed statements attached to the petition for probate, sustain the executor in his offer of the will only. The fact that the executor is also personally interested is immaterial, for the question concerns the privilege of any nominated executor as such. No one interested, either as a legatee or nominated executor, in a putative codicil or testamentary writing can, by the act of filing such codicil or writing in the Surrogate's Court, before the nominated executor in an undisputed last will of the same testator has filed the latter for probate, force the executor named in such last will, when confronted with what be believes to be a " cloud " on the record, to undertake either to sustain or to defeat the previously-filed writing, for the law places on the executor of the will the duty of identifying the true last will and confers on him also, by virtue of his office alone, the privilege of casting the burdens of litigation onto those who stand to be benefited by the disputed writing or portion thereof. Even if the respondent had attacked the will itself on the ground of incompetency, then the mere nomination therein of the executor would qualify him to attack the codicil, if he chose to do so (*Matter of Greeley*, 15 Abb. Pr. [N. S.] 393); but where the validity of the will is not in question an executor may contest a subsequent will (*Matter of Mooney*, 73 Misc. 315) or a codicil, *e. g.*, substituting a new coexecutor (*Matter of Coursen*, 4 N. J. Eq. 408).

The executor, therefore, by virtue of his office as such, is within his rights in declining to offer this codicil for probate, and that he is not bound to prove a negative merely because he appears to have anticipated a possible partial defense, which the codicil, that had been filed before the will, presented when the executor came later to file the will for probate.

There is no doubt that this respondent, named as sole legatee in the codicil, had the right to interpose his answer to this petition, wherein he impliedly admits the validity of the will, and by way of partial avoidance sets up the subsequent codicil as valid. The nearest case in this respect that has come to the attention of the court arose out of a mutilated will. It has been held in Georgia that a legatee whose name had been cut out from a will may, when the will is propounded, enter a caveat to its being probated in its incomplete condition, and may plead and prove what were the words removed from the will, and pray that it be probated as

originally executed, for he is not compelled merely to file a caveat to the probate of the will as propounded, and then in a separate litigation propound the same with the addition of the missing clauses. (*Hartz* v. *Sobel,* 136 Ga. 565; 71 S. E. 995; 38 L. R. A. [N. S.] 797.)

The burden is on this respondent legatee named in the codicil to establish his allegation that the codicil is a valid and genuine part of the testamentary plan of his mother. (*Carle* v. *Underhill,* 3 Bradf. 101.)

Those who claim benefit under an undisputed will or codicil must prove it in the jurisdiction where the benefit is claimed, under penalty of having letters of administration issue upon failure to do so within a time fixed by the court. (*Matter of Cameron,* 47 App. Div. 120; affd., 166 N. Y. 610.)

In another such case, RICH, J., wrote: " A paper writing purporting to be a last will and testament of a decedent, which is simply filed in the surrogate's office, does not thereby *ipso facto,* become a *valid* will, but can only be established as such in a proper proceeding instituted for that purpose." (*Matter of Billet,* 187 App. Div. 309. See, also, *Matter of Friedman,* 164 Misc. 440.)

So, in *Matter of Carter* (74 Misc. 1) Surrogate FOWLER ordered letters of administration to issue if the legatee in the filed will failed to begin proceedings to probate it within a set time.

In another like case (*Matter of Dressel,* 102 Misc. 648) the surrogate wrote: " The provisions of the paper are not advantageous to the petitioner, and she certainly cannot be compelled to petition for its probate simply to enable her to urge objections to it. * * * The instrument, however, does not prove itself."

The moving party appears to have assumed that the codicil does prove itself; and he knew, before he began this motion, that this assumption was challenged. The cases and texts cited by him also assume that the will or codicil is valid. No case clearly supporting such a motion has come to the attention of the court.

My conclusion is that this motion should be denied, upon the merits.

Enter an order in accord with this decision.