## CUMMINGS et v NICHOLS et

Ohio Appeals, 1st Dist, Clinton Co

No 110. Decided April 23, 1936

C. Luther Swaim, Wilmington, for plaintiffs in error.

Smith, Rogers & Smith, Wilmington, and R. H. Hildebrandt, Wilmington, for defendants in error.

## OPINION

By Matthews, J.

By this proceeding in error to the judgment of the Court of Common Pleas of Clinton County, it is sought to reverse a judgment of that court sustaining a certain paper writing as the valid last will and testament of Flora M. Nichols, deceased.

This paper writing was admitted to probate on February 6th, 1934, and thereupon Frank Cummings and others of the next of kin and heirs at law of the decedent instituted this action in the Court of Common Pleas to contest such paper writing as her last will and testament.

It was admitted that Flora M. Nichols was of sound mind on December 7th, 1931, and that on that date she executed the paper writing of her own free will before the attesting witnesses with the intention

of making a will. It was her will but the claim is that before her death it had ceased to be her last will, because she had cancelled it with the intention of revoking it. That was the sole issue presented in the will contest. The jury was impaneled and, after the court had heard all the evidence offered by the contestants, the jury was instructed to return a verdict sustaining the paper writing as a will, which it did. Judgment having been rendered on the verdict, the validity of that judgment depends solely upon whether the court was authorized under the law and facts in so instructing the jury.

The paper writing in question is typewritten and contains three dispositive paragraphs or items in addition to the usual recitals at the beginning and ending of a will. The three dispositive paragraphs are:

"Item 2: I give and devise my real estate on Columbus Street and Mulberry Street, in the City of Wilmington, Ohio, to Corwin C. Nichols and Mary Nichols Walker, equally.

"Item 3: I give and bequeath to Harlan M. Walker and Katherine Walker, children of Mary Nichols Walker, each the sum of One Thousand Dollars, and to Clinton H. Nichols, Mary Nichols, and Elouise Nichols, children of Corwin C. Nichols, each the sum of One Thousand Dollars.

"Item 4: The residue of my estate, both real and personal, of which I shall die seized, I give, devise and bequeath as follows:—To my brother, Frank Cummings, the one-half part thereof absolutely and in fee simple; and to my sister, Lillian Stevens, the remaining one-half part thereof, for and during her natural life. At the death of my said sister, if she survive me, if not, then at my death, I give, devise and bequeath said undivided one-half part thereof, to my brother Frank Cummings, and his heirs forever."

An examination of the will presented for probate discloses that there are lead pencil marks crossing the words in paragraph three, and, in addition that the pencil had been passed many times lengthwise of the words, so that the words were blurred by the pencil, but were still legible through the blur. These pencil marks were confined exclusively to paragraph three. These pencil marks on paragraph three were not on it when it was executed by Flora M. Nichols.

After the contestees introduced this paper writing and the order of probate, the contestants placed five witnesses upon the stand, no one of whom, however, saw the cancellation of paragraph three or knew when, where or by whom it had been done.

The first witness was the attorney who prepared the will, and was one of the attesting witnesses. He testified that the cancellation was not on the instrument when it was executed or when it was placed by the decedent in the bank for safe-keeping. The next time he saw the document was after her death and at that time the marks were on it. Another witness—a cousin of decedent—testified that the decedent had made a will prior to the will of December 7th, 1931, that she had said to her on one occasion after December 7th, 1931: " 'Well, I changed my will and I think I will change it again;" on another, "she was going to change her will," and on still another, " 'Well', she says, 'I haven't got mine changed yet but I am going to.' She said she would have to change it because the property had dwindled until she couldn't do the things she would like to do. And she had so much expense that she would just have to change it." One of the plaintiffs testified the decedent told him that "she was going to make a new will;" that "she made one and intended to make a new will," but he was unable to say whether this conversation was before or after December 7th, 1931, and is as referable to the will that preceded the one under contest as it is to the latter. Another witness testified that decedent lived at his home from October, 1932 to August, 1933, and during that time she discussed with him certain things that she had in the house and "if anything would happen to her what she would do with them. She would say, well she didn't suppose Frank would want them; he was in Richmond and she didn't know what she would do with them. She was all the time kidding you know, and I said 'Give them to me,' and she said 'I would just as soon you would have them as any one else.' That was all there was to it."

The other witness gave only opinion evidence as to the handwriting.

That was all the evidence that has, or could possibly be claimed to have, any tendency to show an intention to revoke her will.

(1) The first question presented is, whether that evidence did have any tendency to prove that at the time paragraph three was cancelled, the testatrix intended to revoke her will thereby. In disposing of this question, the trial court assumed that inasmuch as the cancellation was not on the instrument when it was left in the tes-

tatrix's custody and there was no evidence that it had ever been out of her possession, an inference could be drawn that she had performed the physical act of cancelling and that the only question was whether there was any evidence of her intention.

The method of revoking a will, as well as the making of one is purely statutory. §10504-47, GC, provides the method of revocation. It is:

"A will shall be revoked by the testator tearing, cancelling, obliterating or destroying it with the intention of revoking it, by the testator himself, or by some person in his presence, or by his express written direction, or by some other will or codicil in writing, executed as prescribed by this title, or by some other writing, signed, attested, and subscribed, in the manner provided by this title for the making of a will, but nothing herein contained shall prevent the revocation implied by law, from subsequent changes in the condition or circumstances of the testator."

To effectuate a revocation, by act done to the will itself, there must be a concurrence of the act of tearing, cancelling, obliterating, or destroying the will with "the intention of revoking it." One without the other is of no legal significance. And the intention that is required is to revoke the will—not merely a part or paragraph. As is seen, the witnesses testified that the testatrix said she intended to change her will. She never said she intended to revoke her will, with the resulting intestacy. An intention to change her will negatives such a thought. It imports the meaning that she intended at all times to have a will, but that if she carried out her expressed intention, the provisions of her existing will would be modified—not that the entire will would be revoked, which is the intention essential to accompany the act of cancelling in order that it may have any effect. It is clear, we think, that the witnesses testified to nothing from which an inference could be drawn of an intention to revoke her will entertained by her when the cancellation was made. Indeed it is not known, whether the statements attributed to her were made before or after the cancellation. All that is known is that they were not made at the time of the cancellation. A statement, made after a cancellation, of an intention to make another change could not give character to the cancellation already made.

We are aware, of course, that a cancellation might be of such a character as to be evidence itself of an intention to revoke the entire will. This cancellation is not of that character. It shows on its face that the person who cancelled it exerted great pains to confine the cancellation to the one provision of the will and as to that provision to show clearly that the intent was to remove it from the will. Whoever did it attempted to not only cancel paragraph three, but went further and endeavored to, and almost succeeded in obliterating it. The same care was displayed to leave paragraphs two and four untouched. Why? Clearly with the purpose of leaving them operative, and if so, there could have been no intention to revoke the entire will.

We find that giving the evidence the most favorable construction in favor of the contestants, no reasonable inference can be drawn that the testatrix intended to revoke her will when she cancelled paragraph three and that the court did not err in instructing the jury to return a verdict finding that the paper writing was her last will.

(2) But it is urged that under the law of Ohio the court has no power to instruct the jury to return a verdict in an action to contest a will. We do not so understand the law. It will be noted that the contention relates to the power of the court to instruct the jury, and not to the power of the court or the parties to dismiss the action without a determination of the issues as to the validity of the paper writing as a will. We are concerned here with the same question that was considered in **Walker v Walker, 14 Oh St, 157; Wagner v Zeigler, 44 Oh St, 59; and Clark v McFarland, 99 Oh St, 100.** In Clark v McFarland, supra, it was contended that because the order of probate established a prima facie case in favor of the paper writing it was incumbent upon the contestants to produce more than a scintilla to carry the case to the jury, but the court reviewing the two former decisions reached the conclusion that the trial court's relation to the jury and his duty to instruct it were the same in a will contest as in any other ordinary civil action. At pages 105 and 106 the court said:

"It is perfectly clear that it was not intended by the court to hold that the prima facie validity which attaches to a will by reason of the proceedings in probate should have the effect of removing the will case

from the class subjct to the scintilla rule.

"We thus find three possible rules of procedure:

"1. The strict construction of the statute adopted by the court in Walker v Walker, which denies authority to the trial judge to direct a verdict, no matter what may be the state of the proof.

"2. The more liberal rule established in Wagner v Zeigler, applying to will cases the scintilla rule of evidence.

"3. The ultra liberal rule established in Gomien, Exrx. v Weidemer et al, and Kammann v Kammann, and by the Common Pleas Court in the case under consideration

"We have determined to follow the second of these rules of procedure, and since it appears that some evidence, although slight, was offered by contestants, tending to prove the material facts necessary to be proven in such class of cases, the cause should for that reason have been submitted to the jury."

Judge Jones dissented not on the ground, however, that the court did not have the power to instruct the jury to return a verdict sustaining the will, but on the ground that the court should so instruct the jury unless the contestants produced more than a scintilla of evidence of invalidity.

The rule that the court has power to instruct the jury to return a verdict sustaining a will is stated in **41 Ohio Jur.** (§398) **page 531, et seq,** and the cases following Clark v McFarland, supra, are listed in the footnote.

Of course, the rule stated in Clark v McFarland, supra, must be modified to conform to the decision in **Hamden Lodge No. 517 v The Ohio Fuel Gas Co., 127 Oh St, 469,** but that does not affect the rule in so far as it relates to the power of the court to instruct the jury to return a verdict sustaining a will. The modified rule requires the exercise of the power more frequently.

Counsel relies strongly on Law v Law, 83 Ala., 432, but that trial bore no resemblance to the trial in this case. The court there excluded evidence of declarations by the testator at the time of cancelling a provision in the will. All the Supreme Court held was that those declarations were competent and if it could be reasonably inferred that he had intended to revoke the entire will, the issue should have been submitted to the jury.

(3) The bill of exceptions indicates that during the introduction of the evidence of the second witness there was discussion between the court and counsel, and as a result the court deemed it advisable to exclude the jury from the court room. There was no objection to this at the time. Without recalling the jury the court heard the remaining testimony. There was no objection to this at that time. After hearing all the testimony the court reached the conclusion that the contestants had failed to introduce any evidence tending to prove that the testatrix had intended to revoke her will when the physical act shown upon the will had been done. The question was brought before the court upon a motion to exclude the evidence and it was only after the court had announced his conclusion that the evidence was insufficient, that the contestants requested the court to allow them to introduce this same evidence before the jury. This the court refused to do and sustained the motion of the proponents for an instructed verdict. It is urged that the court erred in refusing to allow the contestants to introduce the same evidence before the jury that had already been heard by the court, and which the court had found to constitute no proof of invalidity of the paper writing as a will.

We find no error prejudicial to the contestants in the procedure adopted by the court. Before they were entitled to have the issue submitted to the jury without a specific instruction as to the kind of verdict that should be returned, it was incumbent upon them to introduce evidence from which reasonable minds might reach different conclusions. It was incumbent upon the court to decide as a matter of law whether they had met that test. Until they had done so, the entire duty rested on the court. How the question should be presented to the court rested in its sound discretion. We find no abuse of discretion in giving the contestants the opportunity to present their evidence to the court in the absence of the jury. The court found their proffer insufficient, and, we think, properly so.

We find no error in the record and the judgment is, therefore, affirmed.

ROSS, PJ, concurs.

HAMILTON, J, dissents in separate memorandum.

## DISSENTING OPINION

**By HAMILTON, J.**

I cannot concur in the majority opinion in this case for two reasons:

First: It is not clear that the court possessed the power under any circumstances to give a directed verdict and decide a contest of a will as a matter of law.

Second: There is some evidence offered on behalf of the contestants that raised some inferences which must necessarily be for the consideration of a jury.

On the question of the power of the court to instruct a verdict, we have the case of Walker v Walker, referred to in the majority opinion, holding that the court had no such power, that the statute, now §12082, GC, required that an issue must be made up, which * * * shall be tried by the jury. In the Walker case, the Supreme Court held that that issue must be tried by the jury under proper instructions from the court.

In the case of Wagner v Zeigler, also referred to in the majority opinion, the view of the Supreme Court seems in conflict with the view expressed in Walker v Walker, but does not overrule in terms the Walker case.

If we give the Zeigler case preference by reason of its being a later decision, then it would seem that the court could, where there is no evidence showing that the instrument was not the last will and testament, instruct the jury to return a verdict.

However, that may be, there was evidence offered which, I think, should have been submitted to the jury to draw the proper inferences therefrom under proper instructions from the court. In fact in the majority opinion the writer, in order to sustain the action of the trial court, proceeds to draw many inferences from the circumstances, which would justify the direction of a verdict. If the court must draw inferences, certainly there would be inferences for the jury to draw.