KRONAUGE ET AL., APPELLANTS, *v.* STOECKLEIN, EXR., ET AL., APPELLEES.

[Cite as Kronauge v. Stoecklein (1972),
33 Ohio App. 2d 229.]

(No. 4066—Decided December 14, 1972.)

*Messrs. Compton, Long, Smith & Macbeth,* for appellants.

*Messrs. Huffman & Landis,* for appellee Jones.

CRAWFORD, J. Plaintiffs, the appellants herein, are the heirs at law of Helen L. White, deceased. Defendants are her executor and the beneficiaries under her will, the principal beneficiary being Jennifer L. Jones aka Jennifer L. Manson.

The will of Helen L. White was executed on October 4, 1968. It was drawn upon the stationery of her attorney, Robert J. Stoecklein, who was also one of the witnesses to the will. She never spoke to him thereafter about changing or revoking the will.

On the otherwise blank margin of the will, in the handwriting of the testatrix, but not touching any of the writing in the will, appear these words:

"This will is void. We have never heard or seen Jennifer Jones or did she come to Jess' funeral so I do not leave her anything

April 17, 1971"

Plaintiffs brought this action to contest the will. Defendants filed a motion for summary judgment. The facts upon the motion were stipulated.

The court sustained the motion and entered judgment for the defendants, the appellees and proponents of the will. Plaintiffs, the appellants and contestants, have appealed.

The parties agree that the single question before us on appeal is whether the writing on the margin revoked the will.

There is no inherent or common-law right to dispose of one's property by will. Such right depends upon statute. The law is quite specific as to the formalities required to make a valid will, or to revoke it. R. C. 2107.33 provides the exclusive methods of revoking a will. These must be strictly complied with in order to make the revocation effective.

R. C. 2107.33 reads:

"A will shall be revoked by the testator by tearing, canceling, obliterating, or destroying such will with the intention of revoking it, or by some person in such testator's presence, or by such testator's express written direction, or by some other written will or codicil, executed as prescribed by sections 2107.01 to 2107.62, inclusive, of the Revised Code, or by some other writing which is signed, attested, and subscribed in the manner provided by such sections. This section does not prevent the revocation implied by law, from subsequent changes in the circumstances of the testator.

"A bond, agreement, or convenant made by a testator, for a valuable consideration, to convey property previously devised or bequeathed in a will, shall not revoke such devise or bequest. The property shall pass by such devise or bequest subject to the remedies on such bond, agreement, or covenant, for a specific performance or otherwise, against the devisees or legatees, which might be had by

law against the heirs of the testator, or his next of kin, if it had descended to them.''

The intent of the testatrix here is not questioned.

Plaintiffs contend that what she did amounted to cancellation. Their brief quotes this definition of the word ''cancel'' from Black's Law Dictionary (rev. 4th ed. 1968):

''To obliterate; to strike or cross out; to destroy the effect of an instrument by defacing, obliterating, expunging, or erasing it; to revoke or recall. To annul or destroy, make void or invalid, or set aside. To rescind or abandon. To repeal, surrender or waive. To terminate.''

Bouvier's Law Dictionary (Baldwins' Century Ed. 1940) defines ''cancel'' as follows:

''To cancel a paper is to cross or deface it with cross-marks or other obliterations; to blot or obliterate. The term is also used figuratively in the sense of to annul or to destroy.''

Webster's Third New International Dictionary (unabr. 1970) says ''cancel'' means:

''1 a.: To mark or strike out for omission or deletion typically with lines crossed latticewise over the passage in question or by a line through the symbols involved.''

As is the method of lexicographers endeavoring to supply complete information, the first, preferred and precise definitions are often followed by merely related synonyms and by expanded and varied meanings. It is significant that all of the definitions of the word ''cancel'' which we have been able to find give as the first and primary meaning one that signifies some type of physical mutilation.

The statute recognizes the same idea in two ways:

(1) By listing the term ''cancel'' with other radical acts in the phrase ''by tearing, canceling, obliterating, or destroying such will with the intention of revoking it''; and (2) by distinguishing these destructive types of revocation from those which are written or by ''writing.''

It is conceivable that a writing might be so placed over the text of the instrument as to constitute both methods. Such is not the case here, where the writing does not touch any part of the wording in the will itself. It must therefore be classified as a writing which is not a canceling;

and, of course, the writing does not purport to be "signed, attested and subscribed in the manner provided by such sections." (R. C. 2107.01 to 2107.62.)

The Ohio cases cited are not conclusive in the present circumstances. *In re Eliker* (1940), 32 Ohio Law Abs. 465, is a case in which a testatrix was found to lack the mental capacity either to make or to revoke a will. Headnote 3 of that case states:

"Revocation of a will within the provisions of Section 10504-47 GC [Section 2107.33, R. C.] may be accomplished by tearing, however slight, if done with the intention of revoking the will."

*Cummings* v. *Nichols* (1936), 6 Ohio Op. 414, held that pencil marks drawn through one clause of a will and oral statements by the testatrix at various times that she intended to change her will, do not effect a revocation.

In the Pennsylvania case of *Lewis* v. *Lewis* (1841), 2 Watts and Sargent's Reports (Pa.) 455, the syllabus reads in part:

"The word 'obsolete' written by a testator on the margin of his will, but not signed by him or any person for him in the mode prescribed by * * * [the Pennsylvania statutes] does not operate as a revocation of the will under * * * [the statute]."

In *Evans' Appeal* (1868), 58 Pa. 238, the court made reference to the Pennsylvania statute, which was apparently quite similar to ours, and which provided that a will could not be "repealed" except by a writing with testamentary formalities "or by burning, cancelling, obliterating or destroying the same by the testator himself, or by some one in his presence and by his express direction."

The word "will" which had been endorsed on the back in the testator's handwriting was erased by an ink line drawn through it. There were two signatures by the testator to the will. The last had been erased with an ink line drawn through it. The same was true of the signature on a later codicil, and under that erasure was the word "cancelled."

The opinion said, at page 246:

"But, I think, a repeal is effected by the *act* of writ-

ing *upon the will itself* a word that manifests an intention to annul it.''

The court further observed that the will and codicil or codicils, as well as all the marks of cancellation, were inextricably combined upon a single sheet of paper.

The opinion distinguishes the case of *Lewis* v. *Lewis* by stating, at page 248, with regard to the Lewis case:

''But it should be observed that though the word was written upon the paper on which the will was written, it was placed where it could have been detached without defacing the instrument. It might have been separated and the will itself remained intact. In this respect it differed from the case now before us.''

Among the other cases cited, one of particular interest in our present question is *Dowling* v. *Gilliland* (1919), 286 Ill. 530. The essence of the opinion appears on page 535 in these words:

''The great weight of authority is to the effect that the mere writing upon a will which does not in anywise physically obliterate or cancel the same is insufficient to work a destruction of a will by cancellation, even though the writing may express an intention to revoke and cancel. This appears to be the better rule. To hold otherwise would be to give to words written in pencil and not attested to by witnesses nor executed in the manner provided by the statute the same effect as though they had been so attested. Where such notation does not in any way obliterate the writing of the will it cannot be said to cancel, and therefore such notation could only be held effective as a revocation of the will as a writing.''

In our opinion, the same reasoning applies equally to the very similar situation now before us.

This disposes of the appeal. However, we have been fascinated by a procedural point commented upon by the trial court. R. C. 2741.04 provides that in a will contest the issues shall be tried by a jury. This provision has been held mandatory. *Carr* v. *Howard* (1969), 17 Ohio App. 2d 233.

Yet it has also been held that a verdict may be directed in such a case. *Cummings* v. *Nichols, supra.*

Then in *Shinn* v. *Phillips* (1964), 8 Ohio App. 2d 58, three highly respected judges of the Court of Appeals for Cuyahoga County went one step further in holding that the statute providing the summary-judgment remedy is available in all civil cases, even including a will contest, so that where there is no genuine issue as to any material fact in such a case, but only a dispute as to the law, summary judgment may be entered.

The trial court here cited Civil Rule 56, entitled Summary Judgment, which superseded former R. C. 2311.041 on the same subject. The contestants in a will contest are "seeking to recover upon a cause of action" as described in the former statute. Whether they are "seeking to recover upon a claim" as described in Civil Rule 56 may be questioned. However, that distinction is not within the purview of the present appeal.

Counsel on both sides, the trial court, and the Court of Appeals for Cuyahoga County all appeared to be satisfied that summary judgment is available in a will contest. It would be beyond the scope of our present task to challenge the point. Our insistence upon the old jury routine, even if correct, could serve no useful purpose, but would only delay a result which we find is required by law. If there is no genuine issue as to any material fact, there is nothing for a jury to do. However, this development in the law is of sufficient importance that we felt impelled to comment upon it.

For the reasons given above, upon the issue squarely presented, the judgment will be affirmed.

*Judgment affirmed.*

SHERER, P. J., and KERNS, J., concur.