HORST, Appellant,

v.

HORST et al., Appellee.

[Cite as *Horst v. Horst,* 184 Ohio App.3d 281, 2009-Ohio-5043.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 22993.

Decided Sept. 25, 2009.

Hochwalt & Schiff, L.L.C., and Michael A. Hochwalt; and Sherrets Law Office and Carl S. Sherrets, for appellant.

Scott Davies and Michael Moloney, for appellee.

FRENCH, Judge.

{¶ 1} Plaintiff-appellant, Patricia A. Horst, appeals the judgment of the Montgomery County Court of Common Pleas, Probate Division, which granted partial summary judgment in favor of William J. Horst, defendant-appellee. In this opinion, we conclude that the trial court did not err when it determined that no questions of material fact remained concerning revocation of the will at issue. Therefore, we affirm.

{¶ 2} Patricia and William are the surviving children of Mary Horst, who died on January 6, 2005. Mary had executed a will on November 19, 2003. William filed an application to probate the will on January 13, 2006. A magistrate of the court admitted the will and appointed William as executor.

{¶ 3} Patricia filed a will-contest action. In her complaint, she alleged that Mary (1) revoked the will, (2) lacked testamentary capacity when she executed the will, (3) did not freely and voluntarily execute the will, and (4) was unduly influenced when she executed the will.

{¶ 4} Attached to Patricia's complaint are two copies of the will. The first is a clean copy. The second copy has substantial markings in the margins and within the body of the text on the first page. There is an "X" over about ten lines of text on that page, and the "X" itself is marked out. The words "the amount of Five Hundred Dollars ($500.00)" are blackened in ITEM II. The words "This Will is correct" are legible at the top of the page. Other writings, and multiple signatures by Mary, are also legible between and around the typewritten lines.

On the second page, there are no markings surrounding or within the text, but there is marked-out writing surrounding Mary's final signature.

{¶ 5} William answered. He also filed a counterclaim against Patricia for reimbursement of estate taxes and abuse of process.

{¶ 6} On June 26, 2008, William moved for summary judgment on all counts of Patricia's complaint. Patricia moved for continuances so that discovery could be completed but ultimately responded. Multiple deposition transcripts were filed with the court.

{¶ 7} On August 14, 2008, the trial court issued an entry granting William's motion for summary judgment in part and denying that motion in part. The court concluded that as a matter of law, Mary had not revoked the will, and no questions of material fact remained as to that issue. As for the issues of whether Mary had testamentary capacity to execute the will, whether she freely and voluntarily executed the will, and whether she was unduly influenced when she executed the will, the court concluded that questions of material fact remained and denied summary judgment as to those issues.

{¶ 8} Thereafter, Patricia agreed to dismiss the counts of her complaint giving rise to all issues except whether Mary had revoked the will, and William agreed to drop his counterclaim. The parties filed an agreed entry to dismiss those claims on September 19, 2008.

{¶ 9} Patricia appeals the trial court's decision granting partial summary judgment. She raises a single assignment of error:

{¶ 10} "The trial court committed error when it granted a summary judgment and decided that this will was not cancelled or obliterated and also when the court decided that there was no genuine issue of material fact where reasonable minds could come to any other conclusion other than that this will was not revoked."

{¶ 11} We review a summary judgment de novo. *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265, citing *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153. When an appellate court reviews a trial court's disposition of a summary-judgment motion, it applies the same standard as the trial court and conducts an independent review without deference to the trial court's determination. *Maust v. Bank One Columbus, N.A.* (1992), 83 Ohio App.3d 103, 107, 614 N.E.2d 765; *Brown* at 711, 622 N.E.2d 1153. We must affirm the trial court's judgment if any grounds the movant raised in the trial court support it. *Coventry Twp. v. Ecker* (1995), 101 Ohio App.3d 38, 41–42, 654 N.E.2d 1327.

{¶ 12} Pursuant to Civ.R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admis-

sions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Accordingly, summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46.

{¶ 13} In her brief, Patricia addresses Mary's relationship with her children, Mary's frugality, the value of the estate, and William's actions and expenditures prior to Mary's death. These matters are irrelevant to the question before us— whether Mary revoked the will.

{¶ 14} R.C. 2107.33(A) provides that a will "shall be revoked" in the following ways:

{¶ 15} "(1) By the testator by tearing, canceling, obliterating, or destroying it with the intention of revoking it;

{¶ 16} "(2) By some person, at the request of the testator and in the testator's presence, by tearing, canceling, obliterating, or destroying it with the intention of revoking it;

{¶ 17} "(3) By some person tearing, canceling, obliterating, or destroying it pursuant to the testator's express written direction;

{¶ 18} "(4) By some other written will or codicil, executed as prescribed by this chapter;

{¶ 19} "(5) By some other writing that is signed, attested, and subscribed in the manner provided by this chapter."

{¶ 20} This court has held that "R.C. 2107.33 provides the exclusive methods by which a will may be revoked. In order to make an effective revocation of a previously made will, there must be strict compliance with the provisions of the statute." *In re Mantalis* (1996), 109 Ohio App.3d 61, 64, 671 N.E.2d 1062, citing *Kronauge v. Stoecklein* (1972), 33 Ohio App.2d 229, 230, 62 O.O.2d 321, 293 N.E.2d 320.

{¶ 21} Here, the trial court found that Mary did not revoke the will in a manner consistent with R.C. 2107.33(A). We agree. While Mary may have marked an "X" across portions of the text on the first page of the will, blackened language regarding her bequest to Patricia, written additional language in the margins, and crossed out other language in the margins, she did not tear, cancel,

obliterate, or destroy the entire document. Instead, she left almost all of the text on the first page visible and left the second page, including the date and her signature, entirely intact. She also left one copy of the will completely unmarked.

{¶ 22} "To effectuate a revocation, by act done to the will itself, there must be a concurrence of the act of tearing, cancelling, obliterating, or destroying the will with 'the intention of revoking it.' One without the other is of no legal significance." *Cummings v. Nichols* (1936), 53 Ohio App. 520, 524, 6 O.O. 414, 5 N.E.2d 923. Important for this case, the required intention is the intention "to revoke the entire will—not merely a part or paragraph." Id. At most, Mary's markings could indicate an intention to change portions of the will. But nothing on the face of the document indicates an intention to revoke the will entirely. Indeed, the words "This Will is correct" support its validity.

{¶ 23} At her deposition, Patricia said that Mary's friend Evelyn Jones told Patricia that Mary told Evelyn that she had had a will at one point but that "she had ripped up the will and that she was going to make a phone call to the lawyer who had drawn up the will telling him to negate the will." Patricia admitted, however, that Mary had not ripped up the will at issue here because it is still intact. Compare *In re Evans* (Aug. 22, 1983), 4th Dist. No. 82 CA 11, 1983 WL 3262 (testimony from witness that decedent had cut up her will in front of the witness supported trial court's finding that decedent had revoked her will).

{¶ 24} Patricia also presented evidence that Mary had talked with a financial planner and an attorney about preparing estate-planning documents, which may have included a new will, and that Mary was requesting these documents in the weeks immediately before her death. Patricia contends that her mother's haste to prepare these documents shows that Mary did not believe that she had a valid will and thus that Mary must have intended to revoke the will when she placed the "X" on the first page. These contentions, however, are purely speculative, and they have no basis in the record. In his deposition, John J. Kersey, the financial planner, testified that Mary "thought she had a basic will. She wasn't sure." He also said that Mary had not said "directly" that she needed a will but had indicated that "she knew she might need to do something additional." These statements contradict Patricia's speculation that Mary believed she needed a new will because she had revoked her old one. Furthermore, Patricia said that she had never seen the will before it was probated, had not known the will existed before that time, and does not know who placed the "X" on the first page.

{¶ 25} In *Kronauge*, the decedent had written and dated the following in the margin of her will: "This will is void. We have never heard or seen Jennifer Jones or did she come to Jess' funeral so I do not leave her anything." *Kronauge* at 230, 62 O.O.2d 321, 293 N.E.2d 320. The intent of the decedent was

not at issue; clearly, she had intended not to leave anything to Jennifer Jones, her primary beneficiary. Nevertheless, this court held that this writing, standing alone, was not enough to revoke the will at issue. Instead, revocation required some type of physical mutilation.

{¶ 26} The *Kronauge* court, in dicta, left open the possibility that writing placed over text could "cancel" a will under the statute, a possibility Patricia seizes upon here. In *Kronauge*, however, the intent of the decedent was clear— "This will is void." In contrast, here there is no evidence that Mary intended to revoke the entire will. At most, her markings may signify her intention to change her $500 bequest to Patricia, but they do not signify her intention to revoke the entire will in any manner consistent with R.C. 2107.33(A).

{¶ 27} For all these reasons, we conclude that the trial court did not err in determining, as a matter of law, that Mary did not revoke the will, and no questions of fact remain concerning that issue. Therefore, the trial court did not err in granting partial summary judgment in favor of William, and we overrule Patricia's assignment of error. We affirm the judgment of the Montgomery County Court of Common Pleas, Probate Division.

Judgment affirmed.

GRADY and FROELICH, JJ., concur.

JUDITH FRENCH, J., of the Tenth District Court of Appeals, sitting by assignment.